[S. F. No. 21371. In Bank. Aug. 13, 1964.]

DAVID W. TOMERLIN, Plaintiff and Respondent, v. THE CANADIAN INDEMNITY COMPANY, Defendant and Appellant.

Hanna & Brophy, Eugene A. Biglow and George Brunn for Defendant and Appellant.

McCormick, Barstow, Sheppard, Coyle & Best and Robert E. Coyle for Plaintiff and Respondent.

TOBRINER, J.—This case involves four issues which emanate from the representations of an attorney retained by an insurance company to defend an insured under a personal liability insurance policy. First, we hold that substantial evidence supports the trial court's findings that the attorney possessed the authority to bind the insurer by his representations respecting the coverage of the policy; second, we believe that the attorney's representations estop the insurer from denying such coverage; third, we find no dictate in public policy that prevents an estoppel from imposing liability found upon an intentional tort; finally, the damages, predicated upon estoppel, must comprise the promised coverage.

We set forth the facts of the case. Defendant issued a comprehensive liability policy obligating it to pay for liability incurred by plaintiff for bodily injury sustained by any person. Defendant agreed under the policy to defend any action alleging such injury. The policy specifically excluded coverage for "Bodily injury . . . sustained by any person as a result of an assault committed by, or at the direction of, the insured."

On August 28, 1959, plaintiff personally assaulted and battered one Maurice Jack Villines. On September 3, 1959, at defendant's request, plaintiff executed a reservation of rights agreement providing that defendant could investigate the incident and defend any action by Villines "without prejudice to the [defendant] under the policy, and still reserving unto the said [defendant] all its rights and defenses under said policy. . . ." Shortly thereafter, Villines filed an action against plaintiff alleging assault and battery and claiming compensatory and punitive damages.

Plaintiff engaged Hollis G. Best as his personal attorney. Best contacted defendant's adjuster, who eventually notified Best that defendant would defend the action under the reservation of rights agreement. Defendant thereafter retained a San Francisco attorney, Edward A. Friend, to defend plaintiff and "represent . . . [defendant's] interests in the lawsuit." Best advised Friend that he was plaintiff's personal counsel and that Friend was to keep him informed of all proceedings in the Villines suit. Until his withdrawal from the case, Best remained in continuous contact with Friend, and was listed on the depositions as attorney of record together with Friend.

On September 14, 1960, Villines filed an amended complaint adding two counts of negligence to the assault and battery allegation. The answer filed on plaintiff's behalf raised as affirmative defenses, the defense of self and defense of property.

On November 15, 1960, while Friend and Best were discussing the *Villines* case, Friend referred to the decision in *Walters* v. *American Insurance Co.* (1960) 185 Cal.App.2d 776 [8 Cal.Rptr. 665],[1] giving his views of its effect. Best

---

[1] In *Walters* v. *American Insurance Co., supra,* the District Court of Appeal held the insurer liable to the extent of a settlement made by the insured with a third person who had threatened to sue the insured for injuries allegedly sustained through an assault and battery by the insured. The insurer's liability was apparently premised upon the theory that in

testified that Friend "advised me that in his opinion the decision . . . would do away with the reservation of rights agreement, and [defendant] would have to afford coverage." On December 5, 1960, Best received a copy of a letter from Friend to defendant, in which Friend advised defendant that "If the [*Walters*] opinion becomes final, as it will unless the State Supreme Court grants a hearing this month, then our reservation of rights agreement will become a nullity."

After this court, on December 21, denied a hearing in *Walters*, Best and Friend again discussed the matter. Best asked Friend whether defendant's position on the reservation of rights had altered as a consequence of the *Walters* decision. Friend replied that defendant "was continuing without a reservation of rights to defend the action." Best correctly interpreted Friend's statement to mean that defendant would afford coverage, and not that it merely would present the defense, which, in fact, it was rendering under the reservation of rights agreement. Best told Friend that "in view of that" he would no longer "be concerned with representing Mr. Tomerlin. . . ." Best then informed plaintiff that defendant was accepting liability without reservation, and that plaintiff no longer needed personal counsel. Best had nothing further to do with the Villines suit.

On the first day of trial, counsel for Villines dismissed the two negligence counts and the claim for punitive damages. Plaintiff testified that "At this time I asked Mr. Friend if this changed my picture as far as my insurance coverage was concerned, and he said no, that the coverage is still the same as it had been before he dropped the negligence counts." On the same day plaintiff's wife asked Friend if "this lets the insurance company off the hook?" to which Friend replied "No, not as far as I am concerned."

In March 1961, the jury returned a verdict of $15,000 against plaintiff. When a juror attempted to console Mrs. Tomerlin, by telling her that "it was all insurance money," Friend, who was present, did not deny coverage but stated only that it was a staggering amount. A short time later Friend again assured Mrs. Tomerlin that under the *Walters* decision the insurance company remained liable. In April 1961, however, Friend notified plaintiff that defendant disclaimed any liability to pay the Villines judgment.

view of the insured's claim of self-defense, the insurer owed a contractual duty to defend the threatened action. By failing to notify the insured whether or not it would defend him in event of a suit by the third party, the insurer breached its contract to defend.

Plaintiff brought this action seeking a declaration of defendant's liability. The trial court found that Friend had represented to plaintiff that defendant was defending the Villines action without any reservation, that such representations were binding upon defendant, that in reliance upon these representations plaintiff permitted his personal counsel to withdraw from the Villines suit, and that defendant was therefore estopped to deny its obligation to pay the judgment. The trial court entered judgment that the defendant is obligated to pay, on plaintiff's behalf, the amount of the award in the Villines action. Defendant appeals the judgment of the trial court.

The primary issue in this case turns upon whether an attorney hired by an insurance company to defend an insured possesses the authority to bind the insurer with regard to coverage of the policy. We have concluded that upon the facts of this case the attorney, Friend, had both actual and ostensible authority to bind defendant.

Initially we point out that defendant's contention on appeal that Friend lacked such authority constitutes a challenge to the sufficiency of the evidence; we need therefore determine only whether the record contains any substantial evidence to support the findings of the trial court. (*Nichols* v. *Mitchell* (1948) 32 Cal.2d 598 [197 P.2d 550] ; *Kazanteno* v. *California-Western etc. Ins. Co.* (1955) 137 Cal.App.2d 361 [290 P.2d 332] ; *Correa* v. *Quality Motor Co.* (1953) 118 Cal.App.2d 246 [257 P.2d 738].)

■ Actual authority arises as a consequence of conduct of the principal which causes *an agent* reasonably to believe that the principal consents to the agent's execution of an act on behalf of the principal. (Civ. Code, § 2316; *County etc. First Nat. Bank* v. *Coast Dairies & Land Co.* (1941) 46 Cal. App.2d 355, 364 [115 P.2d 988] ; *Correa* v. *Quality Motor Co., supra,* 118 Cal.App.2d 246, 251; *Gaine* v. *Austin* (1943) 58 Cal.App.2d 250, 260 [136 P.2d 584] ; 1 Rest. 2d Agency (1957) § 26.) ■ Similarly, ostensible authority arises as a result of conduct of the principal which causes *the third party* reasonably to believe that the agent possesses the authority to act on the principal's behalf. (Civ. Code, §§ 2300, 2317; *Donnelly* v. *San Francisco Bridge Co.* (1897) 117 Cal. 417, 421 [49 P. 559] ; *County etc. First Nat. Bank* v. *Coast D. & L. Co., supra,* 46 Cal.App.2d 355, 366 ; *Kazanteno* v. *California-Western etc. Ins. Co., supra,* 137 Cal.App.2d 361, 372; Rest. 2d Agency, *supra,* §§ 8, 27, 49.)

██ To establish actual or ostensible authority the principal's consent need not be express. ██ "Agency may be implied from the facts of a particular case, and if a principal by his acts has led others to believe that he has conferred authority upon an agent, he cannot be heard to assert, as against third parties who have relied thereon in good faith, that he did not intend to confer such power . . . . ██ An agent's authority may be proved by circumstantial evidence. . . . " (*Gaine* v. *Austin, supra,* 58 Cal.App.2d 250, 260-261.)

██ The record contains substantial evidence to support the finding of both actual and ostensible authority. With respect to actual authority the evidence shows that defendant engaged Friend to represent plaintiff in the Villines suit, and, in the words of defendant's claims manager, "to represent . . . our interests in the lawsuit." Defendant failed to notify Friend of any actual limitations upon his authority although it knew that Friend concerned himself with the question of policy coverage, and, indeed, had notified defendant that its reservation of rights agreement was ineffective.

Mr. Biglow, defendant's counsel in the instant proceeding, stated to the trial court that ". . . in every one of these situations, the defense attorneys hired by . . . the insurance company . . . are called upon by [the insurer] to write letters and express opinions relative to the efficacy of insurance policies. . . ." The record, in fact, discloses a volume of correspondence between Friend and defendant concerning coverage problems. Defendant's silence in the face of this continuing correspondence could reasonably cause Friend to believe that he possessed actual authority to represent defendant in his relations with plaintiff concerning questions of coverage.

Friend's conduct subsequent to the Villines trial further substantiates the finding of his actual authority. Friend wrote to Best on two occasions informing him that defendant did not intend to pay the Villines judgment or to post an appeals bond. In denying coverage on these occasions Friend spoke for defendant. The trial court could reasonably infer from this evidence that Friend served in fact as defendant's conduit for conveying its intentions regarding coverage both before and after the trial and possessed actual authority to bind defendant.

As to ostensible authority, defendant's conduct in retaining Friend and in remaining silent in the face of actual knowledge of Friend's participation in coverage problems

constitutes sufficient evidence to sustain a finding of ostensible authority. Defendant could not reasonably expect that Friend, thrust into the close relationship of attorney and client with plaintiff, would exercise absolute reticence concerning matters of insurance coverage.

Defendant must have known that during the course of the defense the insured's attorney would be frequently required to discuss questions of insurance coverage. Indeed, as we noted above, during the first day of the Villines trial the rapid change of circumstances compelled Friend to express authoritatively defendant's intention regarding coverage.

Moreover, Mr. Best, testifying in his capacity as an experienced counsel in personal injury actions, stated that in cases involving defense by an insurance company the uniform practice with regard to *all* questions involving the insurer is for the parties to the action to deal with the attorney retained by the insurer.

Finally, defendant, rather than plaintiff, must bear the burden of blame for any misconstruction that plaintiff may have placed upon the precise scope of Friend's authority. Defendant created, as between plaintiff and Friend, a relationship of the highest confidence. Plaintiff necessarily reposed his absolute trust in Friend. Such trust, by its very nature, precludes the drawing of delicate distinctions as to the exact extent of Friend's authority. The situation is similar to that which occurred in *Kazanteno* v. *California-Western etc. Ins. Co., supra,* 137 Cal.App.2d 361, 374, in which the court found that an insurer's agent exercised ostensible authority despite the policy's express denial of such authority. The court quoted from *Raulet* v. *Northwestern etc. Ins. Co.* (1910) 157 Cal. 213, 230 [107 P. 292], to the effect that "The insured usually confides implicitly in the agent securing the insurance, and it is only just and equitable that the company should be required to call specifically to the attention of the policy-holder [limitations upon the agent's authority]."

Defendant would rebut the above showing of Friend's actual and ostensible agency by the citation of cases which hold that an attorney in an adversary proceeding lacks the authority to surrender his client's rights. (*Bice* v. *Stevens* (1958) 160 Cal.App.2d 222, 231 [325 P.2d 244]; *People* v. *Davis* (1957) 48 Cal.2d 241, 256 [309 P.2d 1]; *Britschgi* v. *McCall* (1953) 41 Cal.2d 138, 142 [257 P.2d 977]; *Fresno City High School Dist.* v. *Dillon* (1939) 34 Cal.App.2d 636, 646 [94

P.2d 86] ; but see *Gagnon Co., Inc.* v. *Nevada Desert Inn, Inc.* (1955) 45 Cal.2d 448, 461 [289 P.2d 466] ["[T]here is a rebuttable presumption that [the attorney] had such authority"] ; *Pacific Tel. & Tel. Co.* v. *Fink* (1956) 141 Cal. App.2d 332, 338 [296 P.2d 843].) Yet these cases, distinguishable from the instant one, involved the attorney's consent to the virtual destruction of the very subject matter of the litigation.

In *Bice,* for instance, plaintiffs had brought an action for fraud against several defendants; yet without express authority and without plaintiffs' knowledge, plaintiffs' attorney inadvertently dismissed the action against one of the defendants, thereby effecting a dismissal of the entire case. Emphasizing the manifest inequity of the dismissal, the court reinstated plaintiffs' case, saying, "Plaintiffs did not at any time authorize their attorney to dismiss with prejudice and thus dispose of a $60,000 lawsuit . . . for $25 which their attorneys, without their authority, received from one who probably was not a party to the action." (160 Cal.App.2d at p. 233.)

With the exception of *Britschgi,* all of defendant's cases involved the surrender of a client's right during the pendency of litigation between the client and the party benefiting from the surrender. The nature of the adversary proceeding itself places the attorney on notice that his client would not subscribe to the relinquishment of the right which is the essence of the litigation. In the instant case, however, Friend's surrender of his client's defense under the insurance contract did not occur in the context of a proceeding in which defendant and plaintiff met as adversaries. Moreover, in the instant case, plaintiff, relying upon Friend's surrender of his client's right, suffered substantial detriment; none of defendant's citations disclose a situation in which the beneficiary of the surrender of the defense relied upon such surrender and thereby suffered a substantial detriment.

Thus, as we have shown, Friend possessed the authority to bind defendant. The question then arises as to whether defendant, by reason of Friend's representations, is estopped from denying liability under the policy. We proceed to point out that plaintiff, relying upon Friend's representations that defendant would afford full coverage, withdrew his personal attorney from participation in the Villines action and thus suffered substantial detriment.

Such detriment inheres in the denial of personal representa-

tion at the moment when the posture of the case calls for the protection of plaintiff's rights. Because of the unique nature of Friend's double agency the relationship between plaintiff and Friend bristled with the difficulties of potential diverging interests. Thus, frequently the insured's interests lie in the settlement of a claim prior to trial since he loses nothing thereby, while the insurer's advantage may inure in risking a larger liability in the hope of winning a judgment of non-liability or of liability upon a ground outside the coverage of the policy.[2]   (See Keeton, *Liability Insurance & Responsibility for Settlement* (1954) 67 Harv.L.Rev. 1136, 1142; cf. *Comunale* v. *Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 659 [328 P.2d 198].)

Similarly, in cases involving multiple claims against the insured, some of which fall within the policy coverage and some of which do not, the insurer may be subject to substantial temptation to shape its defense so as to place the risk of loss entirely upon the insured.[3]   (Cf. *O'Morrow* v. *Borad* (1946) 27 Cal.2d 794, 798 [167 P.2d 483, 163 A.L.R. 894].)   Moreover, since defendant here had previously denied all liability under the policy, its sole economic motive for prosecuting a vigorous defense had been eliminated.

It is true, of course, that defendant's attorney owes to the insured a legal duty to defend in good faith, but as Professor Keeton points out "On the other hand [the] company has no duty to sacrifice its own interests when they conflict with those of the insured." (Keeton, *Liability Insurance & Responsibility for Settlement, supra,* 67 Harv.L.Rev. 1136, 1170.)

Customarily, insurers, in cases involving tort claims in excess of policy limits, notify the insured that he may employ his own attorney to participate in the defense. (*Id.* at p. 1169.)   A like duty must arise in the instant case in which potential conflict stemmed not only from the multiple theories of the Villines complaint and the propriety of settlement, but from the total absence in defendant of any economic interest in the outcome of the suit.   Here defendant not only failed to discharge its duty to notify plaintiff of the threat to his interests presented by Friend's dual agency, but actually

---

[2]The record contains Mr. Best's testimony that he would have entered into settlement negotiations "long before the trial date . . . had I still been representing [plaintiff] in this action."

[3]The amended complaint in the Villines action contained multiple causes of action, some of which were included in the policy coverage and some of which were not.

precipitated the *withdrawal* of plaintiff's personal counsel from participation in the case.

Defendant argues, however, that Best's withdrawal caused plaintiff no detriment because in any event defendant retained the right, under the policy, to conduct the defense. Defendant's contention rests upon the erroneous assumption that it could exclusively control the case even though it lacked an economic interest in its outcome. ▮ In actions in which the insurer lacks an economic motive for a vigorous defense of the insured, or in which the insurer and insured have conflicting interests, the insurer may not compel the insured to surrender control of the litigation. (See *O'Morrow* v. *Borad, supra,* 27 Cal.2d 794, 799; *Fidelity & Casualty Co. of N.Y.* v. *Stewart Dry Goods Co.* (1925) 208 Ky. 429 [271 S.W. 444, 43 A.L.R. 318]; *Compton Heights Laundry Co.* v. *General Accident, Fire & Life Assur. Corp.* (1917) 195 Mo.App. 313 [190 S.W. 382]; 7A Appleman, Insurance Law & Practice (1962) p. 425.)

▮ Concluding that Friend's representations estop defendant from denying liability under the policy, we turn to defendant's contention that the instant judgment violates public policy because it compels performance of a promise to extend coverage for liability based upon an intentional tort. Although an insurer may not indemnify against liability caused by the insured's wilful wrong (Civ. Code, § 1668; Ins. Code, § 533; see, e.g., *Abbott* v. *Western Nat. Indem. Co.* (1958) 165 Cal.App.2d 302, 305 [331 P.2d 997]), defendant's liability here does not arise from a contract executed prior to plaintiff's wilful misconduct, but from an estoppel which arose *after* it. Section 1668 of the Civil Code and section 533 of the Insurance Code establish a public policy to prevent insurance coverage from encouragement of wilful tort. (See *New Amsterdam Casualty Co.* v. *Jones* (6th Cir. 1943) 135 F.2d 191, 193-194; *Northwestern National Casualty Co.* v. *McNulty* (5th Cir. 1962) 307 F.2d 432, 440.) Recovery under a subsequent estoppel does not offend such public policy. "It [does] not tend to encourage unlawful conduct. It [does] not arouse an illegal temptation." (*New Amsterdam Casualty Co.* v. *Jones, supra,* 135 F.2d 191, 195.)[4]

[4]Defendant's reliance upon *Northwestern National Casualty Co.* v. *McNulty, supra,* 307 F.2d 432, is misplaced. That case held that public policy precluded coverage of liability for an intentional tort upon the basis of an estoppel. The court's reasoning is unclear, however, since it acknowledged that the rationale of the rule preventing coverage was to

Nor do the cases cited by defendant holding that "estoppel cannot operate as against positive law or public policy" (e.g., *Industrial Loan & Inv. Co.* v. *Superior Court* (1922) 189 Cal. 546 [209 P. 360] ; *Panzer-Hamilton Co.* v. *Bray* (1929) 96 Cal.App. 460, 464 [274 P. 769]),[5] control the instant situation. All of these cases rest upon the assumption, which is inapplicable to this case, that reliance upon an estoppel contravenes some public policy. As we have indicated above, the estoppel in this case in no way frustrates the policy served by the rule precluding coverage for wilful wrongs.

▇▇▇▇ Finally, we turn to the question of the proper measure of plaintiff's recovery. Plaintiff's cause of action is essentially one of promissory estoppel. (See *Claverie* v. *American Casualty Co. of Reading, Pa.* (4th Cir. 1935) 76 F.2d 570, 572.) And, as frequently happens in promissory estoppel cases, the value of the plaintiff's detrimental reliance need not be identical with, or equated to, the value of the defendant's promise. The cases hold that the appropriate remedy lies in the enforcement of the defendant's promise. The promise here, of course, consisted of defendant's commitment that it stood liable under the policy for the amount of the judgment against plaintiff. The measure of damages must therefore be the amount of the judgment. (*West* v. *Hunt Foods, Inc.* (1951) 101 Cal.App.2d 597, 604 [225 P.2d 978] ; *Hunter* v. *Sparling* (1948) 87 Cal.App.2d 711, 726 [197 P.2d 807] ; Rest., Contracts (1938) § 90.)[6] The detrimental reliance serves as the substitute for consideration, giving rise to a contract right in the plaintiff. (Rest., Contracts, *supra,* § 90.)

In any event, application of a different approach, based upon a theory of "tort," rather than contract, would, in-

discourage wrongdoing. (*Id.* at p. 440.) Moreover, the court noted that because of the insurer's failure to give the insured advance notice of its intention not to indemnify against punitive damages, the insured would have an action for damages against the insurer.

[5]But see *Mutual Life Insurance Co.* v. *Margolis* (1936) 11 Cal.App.2d 382, 384 [53 P.2d 1017] ; *Dibble* v. *Reliance Life Ins. Co.* (1915) 170 Cal. 199, 208-209 [149 P. 171, Ann.Cas. 1917E 34] [upholding provision in insurance policy barring company from contesting validity of policy for fraud in procurement after expiration of one year, despite contention that provision violated public policy].

[6]A general analysis of the various modes of measuring the plaintiff's recovery in promissory estoppel cases occurs in Note, *Promissory Estoppel in California* (1953) 5 Stan.L.Rev. 783, 794. (See also Rest., Contracts, *supra,* § 90; Seavey, *Reliance Upon Gratuitous Promises or Other Conduct* (1951) 64 Harv.L.Rev. 913; 2 Corbin, Contracts (1963) p. 221.)

equitably, frustrate plaintiff's recovery. It would impose upon plaintiff the impossible burden of proving, on remand, the precise extent of the loss caused by the withdrawal of his attorney. The only remedy appropriate to the instant case is the enforcement of the defendant's promise of extension of coverage by means of a judgment that defendant pay the amount of the award in the Villines action.

The insurer here was the author of the ambiguity which caused the insured to act to his substantial detriment. It led the insured into reliance upon its promise of coverage; yet it could have quite simply clarified the situation by a direct communication to the insured. It promised the coverage which it now would avoid. The sensitive relation of the insurer to the insured, which the courts long have strictly enforced, was clouded here by the insurer's misleading and confusing conduct; in the special circumstances of this case it must bear the loss.

The judgment is affirmed.

Gibson, C. J., Traynor, J., Schauer, J., Peters, J., and Peek, J., concurred.

McCOMB, J.—I dissent. I would reverse the judgment for the reasons expressed by Mr. Justice Brown (R.M.) in the opinion prepared by him for the District Court of Appeal in *Tomerlin* v. *Canadian Indemnity Co.* (Cal.App.) 37 Cal. Rptr. 15.