[Nos. D005239, D006051. Fourth Dist., Div. One. Dec. 14, 1987.]

HARTFORD FIRE INSURANCE COMPANY, Plaintiff and Respondent, v.
SPARTAN REALTY INTERNATIONAL, INC., et al., Defendants and Appellants.

## COUNSEL

Butz & Lucas, Douglas M. Butz, Larry A. Shoffner, Garza, Jure & King and Curt W. Jure for Defendants and Appellants.

Hawkins, Schnabel & Lindahl and Kelley K. Beck for Plaintiff and Respondent.

## OPINION

BUTLER, J.—Hartford Fire Insurance Company issued a business liability policy of insurance to Spartan Realty International, Inc., excluding non-owned auto/hired car coverage. A Spartan employee driving a rented car collided with another automobile, seriously injuring Gary R. Yeakel and

Francis J. Pavese, who sued Spartan and David Sanders, its sole shareholder. After the complaint was filed, Spartan exercised an option available under the policy and Hartford issued an endorsement to the policy insuring against liability arising out of the use of nonowned or hired automobiles. Hartford defended Spartan and Sanders with a reservation of rights. Sanders also tendered his defense to Royal Insurance Company, his individual carrier, who accepted with a reservation of rights. Two years later, Hartford realized the policy excluded coverage at the time of the accident, so advised Spartan and filed an action in declaratory relief naming Spartan, Sanders and Royal as defendants. The court adjudicated Hartford's conduct did not waive the exclusion of coverage and Hartford was not estopped from asserting noncoverage. Spartan and Sanders appealed. Royal appealed separately. We consolidate the appeals and affirm.[1]

## I

Spartan employed licensed real estate broker Esther Ann Stephens, who drove a rented car. September 1, 1983, Stephens collided with a car occupied by Yeakel and Pavese. They sustained serious injuries.

Effective April 20, 1983 to April 20, 1984, Hartford issued a policy of insurance insuring Spartan. Section II—comprehensive business liability coverages, coverage D business liability, excluded coverage for bodily injury arising out of the ownership or use of any automobile operated by any person in the course of employment by Spartan, the insured. Thus, on September 1, 1983, the date of the accident, the policy excluded coverage for liability for damages arising out of the accident involving Stephens, Spartan's employee, and her rented car. Sanders individually carried an automobile insurance policy issued by Royal with policy limits of $300,000.

On December 28, 1983, Yeakel and Pavese filed a complaint for damages naming Stephens, the car rental company and Spartan as defendants. Hartford received notice of the claim in November 1983 and the claim was assigned to claims supervisor John Flynn.

Meanwhile, on December 1, 1983, Spartan exercised an optional coverage under section II of the Hartford policy covering liability for damages arising out of the use of any "non-owned automobile or hired car." From and

---

[1] Royal settled with Yeakel and Pavese and took an assignment of their claims against Hartford. Royal stipulated the issues on Royal's appeal were identical to those raised by Spartan and Sanders, adopted the briefs of Spartan and Sanders and agreed to be bound by our decision on the Spartan-Sanders appeal.

after December 1, 1983, Spartan was thus insured under this coverage for liability arising out of the use by an employee of a rented automobile.

Hartford received the Yeakel-Pavese complaint and processed the claim. January 16, 1984, Flynn wrote to Spartan confirming claim discussions and advising the claims had been referred to attorney Lou Estes to represent Sanders and Spartan. The letter recites the coverage D business liability and the exclusion from that coverage of liability for damages arising out of the use of rented or loaned automobiles by Spartan or by use of automobiles in the course of employment by any employee of Spartan, i.e., Stephens and her rented car. The letter then states the coverage D business liability provides "non-owned auto/hired car coverage" which is consistent with the December 1, 1983, endorsement added after the accident and which is made available as an option under the policy.

Flynn goes on to state the Yeakel-Pavese complaint alleges Stephens was employed by Spartan who was in the course and scope of employment at the time of the accident, which of course nicely tracks liability for the non-owned auto/hired car endorsement and concludes with a reservation of rights in accepting the defense.

Spartan and Sanders were defended by Estes at Hartford's expense. Almost two years later, Hartford wrote to Spartan and Sanders advising the optional coverage for nonowned automobile and hired car was added three months after the accident, the optional coverage was not then in effect, Hartford proposed to file in declaratory relief to determine coverage, and offered to pay costs of counsel in defending the suit pending coverage determination.

Hartford immediately filed its complaint seeking a declaration the policy as issued and in effect at the time of the accident excluded coverage as the optional nonowned auto/hired car coverage was effective after the accident. Hartford's second cause of action concerned the refusal of Royal, Sanders's personal automobile insurer, to assume Sanders's defense on the theory Hartford's coverage of Sanders was in excess of Royal's primary coverage. Hartford asked for a declaration concerning Royal's obligation to defend Sanders and to reimburse Hartford's costs incurred in Sanders's defense.

Hartford then moved for summary adjudication the policy in effect at the time of the accident excluded coverage as the optional endorsement was not

added to the policy until three months after the accident. Spartan and Sanders then moved for an adjudication Hartford was required to defend and indemnify them in the lawsuit and as a matter of law, Hartford waived its coverage defense and is estopped to assert a coverage defense.

The court granted Hartford's motion and ruled the motion of Spartan and Sanders was moot, and put their motion off calendar. Spartan and Sanders appeal the order. We affirm.

## II

■ An insurance company has the right to limit coverage and the limitation is valid unless not plainly stated or not in harmony with the expectations of the insured. (*Cravens, Dargan & Co.* v. *Pacific Indem. Co.* (1972) 29 Cal.App.3d 594, 600 [105 Cal.Rptr. 607].) The parties agree the policy in effect September 1, 1983, the day of the accident, excluded coverage for the damages suffered by Yeakel and Pavese. They also agree the issue on appeal is whether Hartford's conduct constitutes a waiver of the exclusion or estops Hartford from asserting exclusion.

The application of waiver and estoppel in the insurance contract context was discussed more than 50 years ago in *Conner* v. *Union Automobile Ins. Co.* (1932) 122 Cal.App. 105 [9 P.2d 863]. In *Conner,* a policy excluded liability for damage while the insured automobile towed a trailer. An accident occurred while a trailer was towed. The insured contended assumption of liability by the insurer to repair the car and partial payment for the repairs acted to waive the exemption. The insurer's agent ordered the repairs on the assumption the company was liable. Three weeks later, the insurer repudiated liability. The insured sued for cost of repairs to the car, contending the insurer waived the exclusion by authorizing the repairs.

"The question is squarely presented on this appeal as to whether an insurance company may be estopped from denying its liability for damages to an automobile incurred in an accident under conditions specifically exempting the company from liability under the unambiguous terms of the policy, by reason of subsequent acts or conduct of the insurer. This case does not involve the waiving of conditions which are required by the terms of the policy as a prerequisite to the establishment of liability, such as prompt notice of the accident. It involves the construction of a contract of

insurance which specifically limits the liability to the use of an automobile without an attached trailer." (*Conner, supra,* at p. 110.)

The court reversed judgment for the insured, holding the "doctrine of waiver" may not be used to reform a contract to create liability for a condition specifically excluded by the terms of the contract. (*Ibid.*)

The court went on to say:

"If the contract is procured by fraud or the conduct of the insurer is such as to mislead the insured to his prejudice, then the insurer may be estopped from denying liability. Estoppel is an equitable bar to the enforcement of a claim when the conduct of the claimant misleads the adverse party to his prejudice. There was nothing in the conduct of the agent for the defendant in the negotiations for the issuance of the policy which could warrant the plaintiff in claiming he was deceived regarding the coverage of the trailer. Neither did the agent's subsequent instructions to make the necessary repairs deceive the insured to his prejudice. The plaintiff was undoubtedly disappointed when the insurance company repudiated its liability, but he was not prejudiced by its original assumption of liability, for undoubtedly the same repairs would have been required at the same cost, if he had made all arrangements himself. Certainly the plaintiff was not prejudiced by the voluntary contribution of $125 by the insurer, which he could not have otherwise secured. It therefore appears the conduct of the agents of the insurance company in subsequently misconstruing the policy constituted neither a waiver nor an estoppel." (*Conner, supra,* at pp. 110-111.)

California has long followed the *Conner* rule that fraud or misrepresentation as to coverage under a policy or issuance of a policy different in coverage from that represented to the insured estops the insurer from reliance on the coverage as stated in the issued policy. (*Ivey* v. *United National Indemnity Company* (9th Cir. 1958) 259 F.2d 205, 209; *Ames* v. *Employers Casualty Co.* (1936) 16 Cal.App.2d 255, 266 [60 P.2d 347]; see also *Goorberg* v. *Western Assurance Co.* (1907) 150 Cal. 510, 518 [89 P. 130] [knowledge of an insurer that a building was erected on land to which the insured had no title waived a term of the policy to the effect the policy was void if the insured misrepresented ownership of the same]; 7 Witkin, Summary of Cal. Law (8th ed. 1974) Equity, § 135, pp. 5354-5355.)

*Tomerlin* v. *Canadian Indemnity Co.* (1964) 61 Cal.2d 638 [39 Cal.Rptr. 731, 394 P.2d 571] considered postaccident conduct by the insurer in the

form of false representations of coverage on which the insured relied to his detriment. *Tomerlin* involved a claim against the insured for negligence and assault and battery. The insurance policy "specifically excluded coverage for 'Bodily injury . . . sustained by any person as a result of an assault committed by, or at the direction of, the insured.'" (*Id.* at p. 641.) The insurer accepted defense with a reservation of rights. The insured employed his own attorney to protect his interests. Thereafter, the insurer's counsel repeatedly represented to the insured and his personal attorney the insurance policy provided full coverage for any damages awarded in the lawsuit and the reservation of rights would not be invoked. In reliance on these representations, the insured withdrew his personal attorney from participation in the lawsuit. Before trial, the plaintiff in the underlying suit abandoned his negligence allegations and proceeded solely on an intentional tort theory. Judgment was entered against the insured on that theory, whereupon the insurer notified the insured it was relying on the language in the policy excluding coverage for assault and refused to pay the judgment. The insured sought declaratory relief against the insurer.

Affirming the lower court judgment in favor of the insured, the Supreme Court held the insurance company's attorney was authorized to "bind the insurer with regard to coverage of the policy" (61 Cal.2d at p. 643). Concluding the attorney's representations on behalf of the carrier constituted coverage for the assault, the court held the carrier was estopped from denying liability under the coverage so extended by the authorized conduct of its lawyer.[2]

■    Here, the parties concede the policy excluded coverage. The defendants do not contend the actions of Hartford or its agent extended coverage under the policy. They claim postaccident conduct estops Hartford from denying coverage. *Tomerlin,* however, specifically requires the insured claiming estoppel must establish detrimental reliance on the insurer's conduct. (*Tomerlin* v. *Canadian Indemnity Co., supra,* 61 Cal.2d 638, 646-648.) This the defendants have not established. They assert reliance is established because: (1) Spartan and Sanders refrained from hiring separate counsel; (2) counsel retained by Hartford, Lou Estes, failed to apprise Spartan and Sanders of plaintiff Pavese's statutory offer to settle in the amount of $435,000; and (3) Spartan completed purchase transactions totaling $25,000 in new assets which, had it been aware of the asserted lack of coverage, it

[2] We confess to some puzzlement concerning the need for invocation of the estoppel doctrine in *Tomerlin*. As the attorney representations extended coverage under the policy to include the excluded risk, it would seem the policy covered the incident without necessity further to find the carrier estopped from denying liability.

would have structured differently such that title would have been taken by Sanders individually rather than by the corporation.

We conclude, however, these facts fail to satisfy *Tomerlin's* reliance requirement. Refraining from hiring separate counsel does not manifest reliance in the same way as withdrawing already-hired counsel. This claim of reliance has a hollow ring where Hartford's initial reservation of rights did not lead to the hiring of independent counsel at a time when Hartford's conduct had yet to induce any reliance.[3] And we need not speculate on whether Estes's failure to communicate the settlement offer violated his professional obligations to his clients. Whatever obligations he had in that regard existed whether or not Spartan and Sanders were separately represented. In any event, Pavese finally settled with Spartan and Sanders two years later for a $450,000 stipulated judgment which, allowing for interest costs, was less than the statutory settlement offer.[4]

We do not completely understand the argument with respect to Spartan's acquisition of additional assets. Apparently Sanders in fact took title in his own name to a significant portion of the $25,000 worth of equipment. Assuming he could legitimately have done so with all of the assets, he was also personally a defendant in the action. Under these circumstances, one could make a strong argument for piercing any corporate veil as to liabilities imposed on Spartan alone. In any event, Sanders testified the net worth of the corporation remained essentially constant throughout the nearly two years of litigation and only the form of its assets had changed.

Accordingly, we conclude the exclusion of liability for damages for non-owned/hired cars in effect at the time of the accident was not waived by Hartford nor was Hartford estopped to deny coverage by reason of its postaccident conduct. The parties agreed upon coverage and exclusions from coverage. Spartan paid the policy premium which was calculated upon the risks assumed and the liabilities excluded. Hartford, Spartan and Sanders agree the policy in effect at the time of the accident excluded coverage.

---

[3] Defendants also point to the fact Hartford failed to offer *Cumis* counsel (see *San Diego Federal Credit Union* v. *Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358 [208 Cal.Rptr. 494, 50 A.L.R.4th 913]) to Spartan until approximately one year after *Cumis* was decided. Putting aside questions of whether *Cumis* applies to this case (see *McGee* v. *Superior Court* (1985) 176 Cal.App.3d 221, 227 [221 Cal.Rptr. 421]; compare *Tomerlin, supra,* 61 Cal.2d at p. 648) and whether such delay was reasonable, the remedy crafted by *Cumis* was the retention of independent counsel, not voiding the reservation of rights.

[4] The $450,000 stipulated judgment was accompanied by Pavese's covenant not to execute, so in reality, Spartan and Sanders suffered no monetary detriment at all.

Defendants do not contend the policy issuance was induced by fraud or misrepresentations by Hartford. In the absence of a showing of detrimental reliance by Spartan and Sanders, we cannot rewrite the policy to include a risk the parties themselves agreed to exclude.

Judgments affirmed.

Wiener, Acting P. J., and Todd, J., concurred.