**CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON and Associated Companies subscribing to Insurance Policy No. 707/AC 1139a, Plaintiff,**

v.

**PACIFIC SOUTHWEST AIRLINES, USAir, Inc., and Richard H. O'Harren, Defendants.**

No. CV 91–2362 WJR (Ex).

United States District Court, C.D. California.

Feb. 26, 1992.

Rod D. Margo, Stephen R. Ginger, Condon & Forsyth, Los Angeles, Cal., for plaintiff.

Fredda L. Alpert, Cotkin, Collins & Franscell, Los Angeles, Cal., for defendant USAir, Inc.

Lance Schaeffer, San Diego, Cal., for defendant Richard H. O'Harren.

## MEMORANDUM AND ORDER

REA, District Judge.

This is a declaratory judgment action to determine whether coverage exists under a policy of liability insurance issued by plaintiff, Certain Underwriters at Lloyd's of London and Associated Companies (collectively "Lloyd's") to Pacific Southwest Airlines ("PSA"). Defendant USAir, Inc. ("USAir") is a corporation duly organized and existing under the laws of the State of Delaware, having its principal place of business at Arlington, Virginia, and is engaged in providing air transportation to the public for hire. USAir is the successor by merger to PSA.

The plaintiff's motion for partial summary judgment came on regularly for hearing before the Court on December 23, 1991. After full consideration of the documented evidence and authorities submitted by the parties, and oral argument of counsel, Lloyd's motion for partial summary judgment is hereby granted.

## I. BACKGROUND

In July 1984, Lloyd's issued an insurance policy to PSA. The policy provided coverage to PSA for airline legal liability and hull risks. The policy did not provide coverage for damage awards resulting from intentional unlawful acts by the insured.

On September 18, 1988, Richard O'Harren, a commercial airline pilot formerly employed by PSA, filed an action in the state court of California against USAir, PSA and others for personal injuries and emotional distress.[1] O'Harren alleged that during the course of his employment as a pilot for PSA, he was unknowingly exposed to a harmful chemical used in the rain repellent system of his aircraft. O'Harren alleged that chemical vapors from the rain repellent system leaked into the cockpit of his aircraft, causing damage to his nervous system, cardiovascular system, kidneys, liver, nasal passages and lungs.

Lloyd's retained the law firm of Kern & Wooley to represent its insured, USAir, in the action brought by O'Harren. Approximately one year later, Lloyd's also retained Kern & Wooley as its coverage counsel in the same action. Lloyd's informed USAir that at least one and perhaps two conflicts of interest existed between Lloyd's and USAir because the insurance policy issued by Lloyd's did not provide coverage for damage awards arising from intentional unlawful acts. Except for this notice, Lloyd's did nothing further in advising USAir of its rights, nor did it advise USAir of USAir's right to retain independent counsel. Lloyd's did not affirmatively seek a waiver of any conflicts of interest.

O'Harren's action proceeded to trial on February 5, 1990 in the San Diego Superior Court. Due to the pretrial dismissal of all but one of O'Harren's causes of action, the sole question presented to the jury was whether PSA intentionally inflicted emotional distress on O'Harren. By way of a special verdict, the jury found that PSA engaged in outrageous and unprivileged conduct with the intent to cause plaintiff severe emotional distress. The jury awarded O'Harren compensatory damages in the amount of $100,000, and punitive damages in the amount of $2,000,000. Judgment on the special verdict was entered in O'Harren's favor on October 30, 1990. USAir appealed. As of the date of this memorandum and order, USAir's appeal is pending in the Fourth District Court of Appeal for the state of California.

On May 2, 1991, Lloyd's filed this action for declaratory judgment seeking a determination that the policy does not provide coverage for the judgment rendered

---

1. Lloyd's represented USAir as successor in interest to PSA. Whenever the Court hereinafter refers to USAir as successor in interest to PSA, the Court will only use the name, USAir.

against USAir. Lloyd's now brings this motion for partial summary judgment on the grounds that, as a matter of law, the policy issued by Lloyd's to PSA does not provide coverage for the punitive damages awarded against PSA.

## DISCUSSION

### I. PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Lloyd's has moved for partial summary judgment on the issue of whether Lloyd's is liable for the award of punitive damages in the underlying litigation. To prevail, Lloyd's must establish that USAir is not entitled to indemnification as a matter of law and that no genuine issues of material fact remain. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

USAir advances two arguments in its attempt to defeat summary judgment. First, USAir argues that California Insurance Code Section 533 does not prohibit indemnification of punitive damages in successor liability cases. Second, USAir argues that Lloyd's should be estopped from denying coverage based on Lloyd's failure to fully inform USAir of actual conflicts of interest. Each theory is discussed hereinbelow.

**A.** *Successor Liability Does Not Fall Under The Purview Of Vicarious Liability For Purposes of Section 533, And Thus The Vicarious Liability Exception To Section 533 Does Not Control.*

California Insurance Code Section 533 provides that "[a]n insurer is not liable for a loss caused by the wilful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others." Cal.Ins.Code § 533 (West 1972). Section 533 is generally interpreted to preclude insurance coverage for punitive damages and is considered an implied exclusionary clause which by statute is read into all insurance policies. *U.S. Fidelity & Guaranty v. American Employers' Ins. Co.*, 159 Cal.App.3d 277, 205 Cal.Rptr. 460 (1984); *City Products*

*Corp. v. Globe Indemnity Co.*, 88 Cal. App.3d 31, 151 Cal.Rptr. 494 (1979).

With respect to punitive damages, the policy behind Section 533 is obvious. If the party against whom punitive damages are awarded is allowed to pass on that liability to the insurance carrier, the dual goals of punitive damages—deterrence and punishment—would be largely frustrated. *See* Cal.Civ.Code § 3294 (West 1991). When a court awards punitive damages, "[t]he objective is to impose such damages in an amount which will appropriately punish the defendant in view of 'the actual damage sustained,' 'the magnitude and flagrancy of the offense, the importance of the policy violated, and the wealth of the defendant.'" *City Products*, 88 Cal.App.3d at 42, 151 Cal.Rptr. at 500–01. If a party is allowed to insure against punitive damages, these factors become irrelevant and both the deterrent and punishment effects are lost. Thus, California has prohibited such indemnification.

The courts interpreting California law, however, have supplied one exception to this legal concept. In vicarious liability cases where an employer is required to pay punitive damages as a result of the actions of one of his employees, the courts have held that Section 533 does not apply and the employer can be indemnified. *Arenson v. National Automobile and Casualty Insurance Company*, 45 Cal.2d 81, 286 P.2d 816 (1955). *Dart Industries, Inc. v. Liberty Mutual Ins. Co.*, 484 F.2d 1295 (9th Cir.1973). This exception is based upon the policy behind Section 533. Section 533 prohibits indemnification of punitive and intentional tort damages in part because wrongdoing would not be deterred by damage awards if a party could simply indemnify itself against such awards. In the case of an employer, the employer has committed no wrong. Therefore, the employer is undeterrable and allowing indemnification does not violate the policy behind Section 533.

USAir argues that Section 533 should not apply to this case. USAir is the successor corporation of PSA. As such, USAir contends that a successor corporation, like an

employer, has also committed no wrong and is undeterrable. Therefore, Section 533 should not apply to successor liability cases for the same reason that Section 533 does not apply in vicarious liability cases. If this premise is correct, USAir would be entitled to indemnification.

The courts have failed to establish a uniform test to evaluate when a successor corporation can properly be held liable for a punitive damage award arising from the intentional acts of the predecessor corporation. The courts have developed two tests, namely, the mere continuation test and the form of the merger test.

In *In re Related Asbestos Cases*, 566 F.Supp. 818 (N.D.Cal.1983), the court was faced with the question whether punitive damage liability may be imposed upon a successor corporation for the acts of the predecessor. The court held, *inter alia*, that the focus should be on whether the successor entity is a "mere continuation" of the predecessor. *Id.* at 823.

Although the "mere continuation" test has merit, the test fails to give adequate weight to the punishment purpose of punitive damages. This Court believes that the mere continuation test should be modified. Instead of focusing on whether the successor entity is the mere continuation of the predecessor, the focus will be on whether the predecessor entity makes up a "significant and identifiable part" of the successor entity. If the predecessor does make up a significant and identifiable part of the successor entity, the successor can fairly be punished for the acts of the predecessor. The reason is twofold. First, so long as the predecessor retains an identifiable existence in the successor entity, that portion of the successor entity remains a wrongdoer and should be punished. In addition, the successor would have paid a lower price when the successor purchased the predecessor. This lower price reflects the potentiality of any and all lawsuits. Therefore,

the successor is not being unduly punished or harmed.

Other courts, under the second test, have focused on a different variable. In *Marks v. Minnesota Mining and Manufacturing Company*, 187 Cal.App.3d 1429, 232 Cal. Rptr. 594 (1986), the court focused on the form of the merger transaction. In *Marks*, the successor purchased the assets of the predecessor for cash. The court held that the nature of the transaction amounted to a "de facto" merger and that therefore the successor corporation inherited its predecessor's punitive damage liability.[2]

There is case law to support the position that both tests should be used. In *Moe v. Transamerica Title Ins. Co.*, 21 Cal. App.3d 289, 98 Cal.Rptr. 547 (1971), the issue was whether Transamerica should be held liable for punitive damages awarded against Transamerica's predecessor entity, City Title. The court focused both on whether the successor corporation had a distinct corporate existence and whether the form of the merger put the successor on notice that the successor was assuming the liabilities of the predecessor. *Id.* at 303–04, 98 Cal.Rptr. at 556–57.

■ This Court is of the opinion that both the "significant and identifiable part" and "form of the merger" tests should be considered because either of these tests may be applicable. For instance, if the successor consists in significant part of the predecessor, such that the predecessor's unique existence has not been eradicated, a court can properly punish the predecessor by punishing the successor regardless of the form of the merger.

In addition, if the successor corporation subsumed the predecessor in a form which recognized that the successor was assuming all the liabilities of the predecessor, the successor cannot claim that it was unfairly punished by the acts of the predecessor because the successor was aware of that

---

**2.** If the predecessor corporation statutorily merged into the successor corporation, the successor corporation will generally take subject to all liabilities currently outstanding. *See,* for example, Cal.Corp.Code § 1107. (West 1964) ("Upon merger pursuant to this chapter the sep-

arate existence of the disappearing corporations ceases and the surviving corporation shall succeed, without other transfer, to all ... debts and liabilities of each in the same manner as if the surviving corporation has itself incurred them.").

possibility when the successor subsumed the predecessor. This awareness disallows indemnification regardless of whether the predecessor makes up a "significant and identifiable part" of the successor.

The final analysis, then, is whether PSA's relationship to USAir is such that the former entity makes up a significant, identifiable portion of the successor entity or whether the form of the merger put USAir on notice that USAir was purchasing PSA subject to PSA's existing liabilities. If either of these propositions hold true, the vicarious liability exception to Section 533 will not apply.

■ The evidence is unclear whether PSA's existence in USAir is significant or identifiable. USAir has submitted some evidence to suggest that PSA's unique existence has been obliterated long ago. For summary judgment purposes, this evidence demonstrates a triable issue of fact whether PSA makes up a significant and identifiable part of USAir.

The form of the merger, however, demonstrates that USAir took subject to the liabilities of PSA and thus the vicarious liability analogy does not apply. PSA was purchased by USAir through a large-scale purchase of PSA's stock. USAir, itself, refers to this purchase as a merger and no evidence has been offered to the contrary. As a result, the Court can properly hold USAir liable for punitive damages because USAir was aware of the possibility of such liability. This Court concludes that the form of the merger did in fact put USAir on notice that it was purchasing PSA subject to PSA's debts and liabilities. In such cases, successor liability is not the functional equivalent of vicarious liability and Section 533 applies.

This holding is consistent with the policy behind punitive damages. Punitive damages are designed to punish the wrongdoer and deter future harm. USAir argues that it was not the wrongdoer, just as an employer is not the wrongdoer when the employer is held vicariously liable for the actions of its employee. The distinguishing factor in this case is that USAir was on notice that it was purchasing PSA subject to the liabilities of PSA and is unable to claim innocence of PSA's actions. Thus, as the successor entity, USAir is responsible as the wrongdoer, in the sense that the successor knew that the predecessor may have committed some wrongdoing and thereby agreed to assume any liability therefore. Using this analysis, the proper party is being punished.

In addition, if Section 533 does not apply, the ultimate cost of the wrongful activity is born by society at large through the cost spreading function of the insurer. Punitive damages are not meant to be spread onto society and are designed to punish the individual wrongdoer, even if the punishment ultimately puts the wrongdoer out of business. Here, the wrongdoer is PSA who merged with the successor entity, USAir. By obligating USAir to pay the punitive damages awarded against USAir, the Court is requiring the wrongdoer, in effect, to bear the burden of its wrong.

USAir's successor liability argument fails. The Court holds that Section 533 of the California Insurance Code prohibits indemnification of punitive damages in successor liability cases where the form of the merger put the successor entity on notice that the successor was purchasing the predecessor subject to that entity's liabilities or where the predecessor entity makes up a significant, identifiable portion of the successor entity. In the instant action, USAir was on notice that it was purchasing PSA subject to PSA's liabilities. Therefore, indemnification based on the vicarious liability exception to Section 533 is improper.

B. *Lloyd's Is Not Estopped From Denying Coverage Based Upon Lloyd's Failure To Fully Inform USAir Of Potential Conflicts Of Interest Because Such Estoppel Would Contravene Public Policy.*

■ Whenever a party has, by his own statement or conduct, led another to rely to his detriment on a deliberate and intentional misrepresentation, courts will generally not allow that party to benefit from the misrepresentation. *Scott v. Federal Life*

*Insurance Company,* 200 Cal.App.2d 384, 19 Cal.Rptr. 258 (1962). The party is said to be "estopped" from asserting the true facts. Estoppel, however, cannot operate against public policy. *Tomerlin v. Canadian Indemnity Company,* 61 Cal.2d 638, 39 Cal.Rptr. 731, 394 P.2d 571 (1964).[3] Lloyd's will be estopped from denying coverage if Lloyd's made any intentional misrepresentations to the detriment of USAir and if this estoppel does not violate public policy.

■ USAir has submitted evidence that Lloyd's failed to fully inform USAir of potential conflicts of interest that could arise due to O'Harren's allegations that USAir was guilty of both intentional and negligent unlawful conduct. Lloyd's retained the law firm of Kern & Wooley to represent USAir in the San Diego action. Approximately one year later, Lloyd's retained Kern & Wooley as coverage counsel to represent Lloyd's interests in the same action. A clear conflict of interest existed between Lloyd's and USAir because the insurance policy precluded coverage for intentional conduct and the complaint in the underlying action alleged both negligent and intentional acts. Lloyd's had a vested interest to make sure that any recovery was predicated on intentional conduct which would insulate it from indemnification for punitive damages. When an insurer is aware of a conflict of interest between it and the insured, the insurer has an affirmative obligation to advise the insured that the insured has the right to obtain independent counsel to represent the in-

sured's interests in defense of any lawsuit. *San Diego Federal Credit Union v. Cumis Insurance Society, Inc.,* 162 Cal. App.3d 358, 208 Cal.Rptr. 494 (1984).

The only action taken by Lloyd's was to notify USAir that a potential conflict of interest existed because Lloyd's would not be liable for damages arising from any unlawful intentional acts. USAir is a sophisticated business entity and perhaps should have inquired further into this notice and sought the advice of outside counsel. Nevertheless, these facts, taken in the light most favorable to USAir, demonstrate that Lloyd's breached its duty in failing to fully inform USAir of the possible conflicts of interest. Consequently, Lloyd's is estopped from denying the potential prejudice caused by the conflict of interest unless that estoppel violates public policy.

Generally, public policy, as reflected in California Insurance Code Section 533, prohibits an insurer from indemnifying an insured against consequential damages arising from the unlawful intentional acts of the insured. The insurer, however, may be estopped from asserting this defense if the insurer's misrepresentations occurred after the insured's tortious activity. *Tomerlin v. Canadian Indemnity Company,* 61 Cal.2d 638, 39 Cal.Rptr. 731, 394 P.2d 571 (1964). Section 533 is designed to deter unlawful intentional torts. If a party could insure against intentional torts, damages stemming from these intentional torts would not deter such conduct. Nevertheless, if the insurer's misrepresentation occurred after the intentional torts of the

---

**3.** Both parties rely extensively on *Tomerlin.* In *Tomerlin,* plaintiff was sued for assault and battery. He tendered the defense of the lawsuit to his insurer, defendant Canadian Indemnity, who provided plaintiff with a defense of the lawsuit under a reservation of rights. In light of defendant's reservation of rights, plaintiff retained his personal attorney to advise him during the course of the defense.

Subsequently, Canadian Indemnity's attorney represented to plaintiff that coverage existed for liability arising from the lawsuit without reservation. Based on this representation, plaintiff's personal attorney withdrew from the case. After a judgment was entered against plaintiff in

the amount of $15,000, Canadian Indemnity denied coverage.

The court recognized the general rule that estoppel cannot operate as against public policy. However, the court focused on the timing of both Canadian Indemnity's and plaintiff's wrongful conduct. Canadian Indemnity committed its wrongful conduct long after plaintiff had committed his wrongful conduct. Thus, if the court forced Canadian Indemnity to indemnify plaintiff, public policy would not be contravened because plaintiff's prior tortious actions were at this point undeterrable. Accordingly, the court held that liability based on estoppel was proper. 61 Cal.2d at 649, 39 Cal.Rptr. at 738, 394 P.2d at 578.

insured, allowing coverage by estoppel will not affect deterrence. Because the action has already been committed, it is undeterrable.

In the instant case, the tortious conduct occurred prior to the merger of PSA and USAir. USAir argues that if Lloyd's is ordered to indemnify USAir, the deterrent value of Section 533 will not be affected because PSA's wrongful conduct has already been committed. Because the deterrent value will not be affected, USAir contends that Lloyd's should be estopped from disclaiming indemnification for the punitive damage award because Lloyd's failed to fully inform USAir of the potential conflicts of interest.

USAir's argument fails because USAir ignores the fact that the policy rationale which supports Section 533 as to consequential damages for intentional torts is different than the policy rationale which supports Section 533 as to punitive damages. Insurers are not allowed to indemnify insureds for consequential damages arising out of an intentional tort because such indemnification will negate the deterrent value of damage awards. By way of contrast, insurers are not allowed to indemnify insureds for punitive damages because such indemnification will not only negate the deterrent effect of such awards but will also destroy the punishment element of punitive damages.

If USAir is to be indemnified by Lloyd's for the payment of punitive damages, public policy will be violated. USAir, the wrongdoer through knowing and conscious assumption of the risk, would be allowed to escape the punishment element of punitive damages. In addition, society would be forced to bear the burden of punitive damages through the cost spreading function of the insurer when punitive damages were not intended to be borne by society.

USAir argues that Lloyd's is also a wrongdoer and that the Court should not allow Lloyd's to benefit from its wrongdoing by shielding itself behind public policy. Lloyd's, however, must defend itself in this action against USAir's counterclaim. USAir has counterclaimed against Lloyd's alleging a violation of the covenant of good faith and fair dealing. If successful, USAir will be entitled to recover damages resulting from Lloyd's alleged improper conduct.

Punitive damages differ from consequential damages resulting from intentional conduct, inasmuch as punitive damages have the added policy rationale of penalizing the wrongdoer. If USAir is permitted to benefit from the theory of estoppel, this benefit will directly conflict with public policy. Accordingly, USAir cannot rely on estoppel in this action.

## II. DEFENDANTS' MOTION FOR A CONTINUANCE

As an alternative to the Court granting partial summary judgment, USAir requests pursuant to Rule 56(f) of the Federal Rules of Civil Procedure that the Court continue the hearing on this motion until adequate discovery has been completed. USAir has failed, however, to designate what it is USAir believes it will discover which would materially affect the outcome of this motion. Moreover, such a showing would be difficult inasmuch as the Court's ruling is based upon legal issues, not factual ones. It is speculative, at best, to conclude that further discovery will affect the Court's decision. The motion for a continuance is denied.

## CONCLUSION

USAir has failed to provide the Court with any viable reason why Lloyd's should be obligated to indemnify USAir for punitive damages awarded in the state action. Insurance Code Section 533 prohibits such indemnification. Additionally, estoppel does not serve as a bar to the applicability of Section 533 where punitive damages have been awarded. Ordering indemnification under the circumstances would violate public policy. The Court grants plaintiff's motion for partial summary judgment and denies defendant's motion to continue the hearing.

IT IS HEREBY ORDERED.