**Lorraine TRAVIS, an individual, Plaintiff—Appellant,**

v.

**VETERANS LIFE INSURANCE COMPANY, a private enterprise, Defendant—Appellee.**

No. 02–55580.

D.C. No. CV–01–00546–AHS.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 3, 2003.

Decided March 28, 2003.

Before D.W. NELSON, WARDLAW and FISHER, Circuit Judges.

MEMORANDUM *

Lorraine Travis sued Veterans Life Insurance Company for an alleged breach of the covenant of good faith and fair dealing arising from Veterans' failure to pay Tra-

---

(iv) Other relevant information regarding conditions in the country of removal.

8 C.F.R. § 208.16(c)(3) (2000) (emphasis added).

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

vis proceeds from her deceased husband Neil's accidental death policy. The district court granted summary judgment in Veterans' favor on the ground that Neil's death, which was related to autoerotic asphyxiation, fell within the policy's exclusion for "intentionally self-inflicted injury." Travis appeals. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse.

At the time that the district court considered Veterans' summary judgment motion, no Ninth Circuit or California case law directly addressed the question of whether death related to autoerotic asphyxiation involved "intentionally self-inflicted injury." Although there continues to be no California case law on the issue, we now have the benefit of this court's opinion in *Padfield v. AIG Life Insurance Co.*, 290 F.3d 1121 (9th Cir.2002). In *Padfield*, we concluded that the typical consequences of autoerotic asphyxiation are not "injuries" and thus recovery for an insured's death related to autoerotic asphyxiation was not precluded by a policy exclusion for death resulting from "intentionally self-inflicted injury." *Id.* at 1129–30. We acknowledge that *Padfield* involves federal common law rather than California law, but we find its reasoning persuasive.

Neither California law nor its public policy dictates a result different from the one reached in *Padfield*. Here, as in *Padfield*, whether the consequences of autoerotic asphyxiation were "injuries" depends upon the ordinary and popular meaning of the term. *Compare* CAL. CIV.CODE § 1644 ("The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning . . . ."), *with Padfield*, 290 F.3d at 1129 (the physical consequences of autoerotic asphyxiation are not injuries "as that term is defined in the 'ordinary and popular sense [by] person[s] of average intelligence and experience'" (quoting *Babikian*

*v. Paul Revere Life Ins. Co.*, 63 F.3d 837, 840 (9th Cir.1995)) (alterations in original)).

Furthermore, that "accidental means" insurance policies are the exception rather than the rule in California supports the conclusion that an insured should generally be covered for unintended death even if the death was related to the insured's voluntary acts. *See Olson v. Am. Bankers Ins. Co.*, 30 Cal.App.4th 816, 35 Cal. Rptr.2d 897, 899–900 (1994) (citing *Weil v. Fed. Kemper Life Assurance Co.*, 7 Cal.4th 125, 27 Cal.Rptr.2d 316, 320–21, 866 P.2d 774 (1994)) (for an insurance policy to exclude coverage for death resulting from intended activities, the policy should contain the words "accidental means"). In addition, California Insurance Code § 533, which excludes an insurer's liability for "loss caused by the wilful act of the insured," was intended to discourage the commission of wilful torts. *See Tomerlin v. Canadian Indem. Co.*, 61 Cal.2d 638, 39 Cal.Rptr. 731, 737–38, 394 P.2d 571 (1964). Even assuming that Section 533 might apply to nontortious conduct, it would not preclude coverage here because harm is not inherent in the act of autoerotic asphyxiation. *Cf. J.C. Penney Cas. Ins. Co. v. M.K.*, 52 Cal.3d 1009, 278 Cal.Rptr. 64, 70, 804 P.2d 689 (1991) (Section 533 precludes coverage for child molestation since the intent to molest is the same as the intent to harm); *see also Interinsurance Exch. v. Flores*, 45 Cal.App.4th 661, 53 Cal.Rptr.2d 18, 23 (1996) ("Where application of section 533 becomes an issue, the insurance company must establish that the insured acted with intent to harm or that the insured committed an inherently wrongful act.").

Guided by *Padfield*, we conclude that under California law the physical consequences of autoerotic asphyxiation are not "injur[ies]" as that term is defined in the

'ordinary and popular sense [by] person[s] of average intelligence and experience.'" *Padfield*, 290 F.3d at 1129 (quoting *Babikian*, 63 F.3d at 840). Because there is no evidence that Neil intended anything other than the typical physical consequences of autoerotic asphyxiation, we conclude that his death does not fall within the policy's "intentionally self-inflicted injury" exclusion. Accordingly, we reverse the grant of summary judgment in Veterans' favor and remand the case for further proceedings in the district court.

REVERSED AND REMANDED.