STRANCH, Circuit Judge, concurring in part and dissenting in part.
This case involves intricate corporate relationships, pollution of a community’s water supply and, despite expensive remediation efforts, allegations of continuing water contamination and resulting birth defects in the community’s children. It arises in the context of a series of corporate structural changes — passing back and forth the liability for the plant’s pollution — and the bankruptcy of a primary corporate defendant. In the forest of issues presented, I agree with many of the majority’s determinations, including its explanation of the facts and its conclusions that: (1) judgment was properly granted against the Plaintiffs on their direct claims of negligence against SBI and Meritor; (2) Meri *620 tor was properly dismissed because the only claim against it was for its independent negligence; and (3) there is no general personal jurisdiction over Tomkins. I cannot agree, however, that SBI is not liable as a successor-in-interest under the express-assumption theory of successor liability. Nor can I agree that the settlement the Plaintiffs were able to negotiate with Scovill in its bankruptcy proceedings necessarily extinguished this liability.
The Plaintiffs allege that pollution of a community’s water supply caused economic losses to land and business owners and personal injury to children and their families as a result of serious congenital deformities in a number of the community’s children. Given the magnitude of the current and continuing harms alleged, I do not think that a $1.5 million settlement is necessarily a “substantial” one, as the majority calls it. Nor can I subscribe to the conclusion that the Plaintiffs’ arguments here constitute an effort to “have it both ways.” Environmental pollution cases such as this one raise unique concerns, such that — at least in the federal-common-law context — there has been a recognition that it may be reasonable to hold predecessor and successor corporations jointly and severally liable for a plaintiffs damages. See, e.g., United States v. Carolina Transformer Co., 978 F.2d 832, 841 (4th Cir.1992) (affirming joint-and-several liability where the transfer of the business “was part of an effort to continue the business in all material respects yet avoid the environmental liability arising from the [the contamination of a landfill]”). It is appropriate to proceed on that premise here for the following reasons.
Tennessee courts have recognized at least four general species of successor liability: (1) express or implied assumption of liability, (2) de facto mergers, (3) the purchasing corporation is a mere continuation of the selling corporation, and (4) fraudulent schemes to escape liability. See Hopewell Baptist Church v. Se. Window Mfg. Co., No. E2000-02699-COA-R3-CV, 2001 WL 708850, at *4 (Tenn.Ct.App. June 25, 2001); Gas Plus of Anderson Cnty., Inc. v. Arowood, No. 03A01-9311-CH-00406, 1994 WL 465797, at *3 (Tenn.Ct.App. Aug. 30, 1994); Signature Combs, Inc. v. United States, 331 F.Supp.2d 630, 640 (W.D.Tenn.2004) (applying Tennessee law). Connecticut, whose law governs the interpretation of the 1985 Transfer Agreement, does the same. See Chamlink Corp. v. Merritt Extruder Corp., 96 Conn.App. 183, 899 A.2d 90, 93 (2006).[1]
The Plaintiffs advanced the first and third of the above theories as to SBI— claiming that SBI expressly assumed liability for the Dickson plant and also that SBI was “merely a continuation” of Scovill. The district court addressed only the argument that SBI represented a “mere continuation” or “continuity of enterprise” of Scovill, finding no successor liability based on those theories. The court failed to acknowledge or rule on the Plaintiffs’ more straightforward argument that SBI became liable as a result of its express assumption of liability. The majority here does consider this express-assumption argument, but rejects it because it finds the *621 October 1985 Transfer Agreement was “in essence” an indemnity agreement, which did not create a direct right of action against SBI for anyone but Scovill. I respectfully disagree.
As I read the majority opinion, it seems to reduce the express-assumption theory of successor liability to a raw contract claim — to be treated as nothing more than an attempt by a third-party beneficiary to enforce a contract to which he or she was not a party. It is true that Plaintiffs express-assumption successor-liability claim is based on the language of the various contracts in this case. But it also bears noting that the Plaintiffs did not bring a simple common-law contract claim against SBI; they brought a tort claim. And while general contract principles may be relevant to considering whether liability has been expressly assumed, an express-assumption successor-liability claim does not necessarily fail where a contract claim may fail. See Haywin Textile Prods., Inc. v. Int’l Fin. Inv. & Commerce Bank Ltd., No. 00 Civ. 8633 RLC, 2001 WL 984721, at *4 (S.D.N.Y. Aug. 24, 2001), aff'd 38 Fed.Appx. 96 (2d Cir.2002).[2]
In any case, I interpret the language of the contracts in Scovill’s liability-hot-potato game differently than the majority. Under the October 1985 Transfer Agreement, SBI burdened itself with the Dickson-plant liabilities in two distinct ways: (1) by assuming liability for “all obligations and liabilities of Scovill relating to” the former Schrader Automotive Division’s business and (2) by agreeing to “indemnify and hold harmless” Scovill against liabilities assumed under the agreement.
Scovill and SBI’s attempt to cancel (and later reverse) SBI’s obligation to indemnify Scovill did not alter SBI’s initial assumption of liability. First, the 1986 Purchase Agreement effected no change in liability assumption. The October 1985 Transfer Agreement — the instrument by which SBI assumed liability — provided that the parties could only amend the agreement “by written instrument making specific reference to [the Transfer Agreement] signed by the party against whom enforcement of any such amendment ... is sought.” Because the 1986 Purchase Agreement makes no reference to the 1985 Transfer Agreement, it fails to satisfy this requirement and therefore had no effect on the assumption of liability.
Second, the subsequent “First Amendment to Transfer Agreement” also failed to modify SBI’s assumption of liability. The amendment released SBI from
[a]ny indemnity obligations that [SBI] may otherwise have to [Scovill] under the provisions of the Transfer Agreement arising out of any situation with respect to which [SBI] and [Meritor], ... are entitled to indemnity from [Scovill] *622 ... under the terms of the Purchase Agreement.
First Am. to Transfer Agmt. § 1, R. 92-10. This provision reversed the flow of indemnification — instead of SBI indemnifying Scovill against liability, the new arrangement required Scovill to indemnify SBI. But this amendment only released SBI from its obligation to indemnify; all of the remaining provisions of the Transfer Agreement — including SBI’s assumption of liability — “remain[ed] in full force and effect.” Id. § 4.
The Defendants counter that Scovill and Meritor, the parties to the 1986 Purchase Agreement, intended to swap liability back to ensure that neither Meritor nor SBI would assume the Dickson plant’s liabilities. But the plain language of the agreement does not say so. And while SBI offers parol evidence to support its contention regarding the parties’ true intent, SBI points to no ambiguity in the 1985 Transfer Agreement or the 1986 Amendment that would permit the consideration of such evidence. In Connecticut, “[w]here the language of the [writing] is clear and unambiguous, the [writing] is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity.” Murtha v. City of Hartford, 303 Conn. 1, 35 A.3d 177, 182 (2011) (internal quotation marks omitted). Similarly, in Tennessee, “the parol evidence rule ... does not permit contracting parties to use extraneous evidence to alter, vary, or qualify the plain meaning of an unambiguous written contract.” Dick Broad. Co., Inc. of Tenn. v. Oak Ridge FM, Inc., 395 S.W.3d 653, 672 (Tenn.2013) (internal quotation marks omitted).
In sum, SBI unambiguously assumed liability for the Dickson plant in the 1985 Transfer Agreement, and no change was ever made to that portion of the contract. Accordingly, it is appropriate to find SBI liable as a successor in interest under the express-assumption theory of successor liability.
This returns us to the extinguishment issue. SBI argues that any successor liability was extinguished by the bankruptcy settlement because, it insists, successor liability is a type of vicarious liability — so the common-law extinguishment rule that applies to vicarious liability in Tennessee should apply to successor liability as well. SBI is correct that Tennessee still adheres to the common-law extinguishment rule in the viearious-liability/respotóeaí-sttpenor context. See Abshure v. Methodist Healthcare-Memphis Hosps., 325 S.W.3d 98, 107 (Tenn.2010). Other states no longer do. See Convit v. Wilson, 980 A.2d 1104, 1116 (D.C.2009) (abandoning the common-law rule and citing cases from Florida, North Carolina, and New Jersey for support). The issue of this trend aside, however, vicarious liability and successor liability are distinct enough concepts that it is wrong to assume Tennessee would blindly apply the vicarious-liability extin-guishment rule to successor liability in this case.
Vicarious liability and successor liability roughly overlap in some circumstances, but are distinguishable where a successor corporation’s liability stems from its express assumption of that liability. SBI points out that many courts and commentators have drawn comparisons between successor liability and vicarious liability. See, e.g., R.C.M. Exec. Gallery Corp. v. Rols Capital Co., 901 F.Supp. 630, 636 (S.D.N.Y.1995) (“[Successor liability ... is fundamentally a form of secondary, vicarious liability imposed upon an innocent party.”); Steven Semeraro, Toward an Optimal System of Successor Liability for Hazardous Waste Cleanup, 6 Stan. Envtl. L.J. 226, 261 (1987) (“Successor liability is *623 a form of vicarious liability in that the party held responsible did not perform, desire, or directly benefit from the act that caused the harm.”). But not all species of successor liability are alike. Where, as here, a successor corporation expressly assumes responsibility for known or expected liabilities, its liability also stems from an action of the successor corporation — the express assumption — and not simply from the tortious action of the predecessor corporation. See George W. Kuney, Misinterpreting Bankruptcy Code Section 363(f) and Undermining the Chapter 11 Process, 76 Am. Bankr.LJ. 235, 261 (2002) (“[T]he successor liability doctrine of express or implied assumption of liability is rooted in the actions of the purchaser (agreeing or appearing to agree to assume liability).”).
The express-assumption doctrine of successor liability, therefore, does not fit comfortably within the definition of imputed, derivative, or vicarious liability. See Certain Underwriters at Lloyd’s of London v. Pac. Sw. Airlines, 786 F.Supp. 867, 871 (C.D.Cal.1992) (holding that in cases where a corporation acquires another corporation with notice of the latter’s debts and liabilities, “successor liability is not the functional equivalent of vicarious liability” because the acquiring corporation is “unable to claim innocence” of the other corporation’s actions); see also William Hao, The Effects of Bankruptcy Discharge and Sale on Successor Liability Claims, 17 J. Bankr.L. & Prac. 3 Art. 4 (2008) (“Traditional successor liability claims, outside of those based on express or implied assumption, are derivative of the underlying claim against the predecessor because they are not based upon the fault of the purchaser and because the measure of damages is based upon the liability of the predecessor.” (emphasis added)).
Instead of the functional equivalent of vicarious liability, express-assumption successor liability is “the functional equivalent of a guarantee” or surety where one party has promised to accept and pay the liability of another. Alec P. Ostrow, Free and Clear of Successor Liability or Whose Liability is it Anyway?, 2003 Norton Ann. Surv. of Bankr.Law 119, 124-128 (2003). And under the version of the extinguishment rule applied in Tennessee suretyship law, “[t]he surety is not released ... if the creditor in the release reserves his rights against the surety....” Hickory Springs Mfg. Co. v. Evans, 541 S.W.2d 97, 99 (Tenn.1976) (emphasis added) (citations omitted). In the case before us now, application of the extinguishment rule as it applies to suretyship in Tennessee would change the outcome because the Plaintiffs specifically reserved their rights against SBI in the Seovill bankruptcy settlement.
The principle underlying this extinguishment analysis is that a successor entity expressly assuming the known liabilities of its predecessor should not be treated merely as an innocent principal. There may be reason to protect successor corporations that have no notice of the liabilities of a predecessor, as “the interest in a fluid market in corporate assets” may be “impeded if purchasers acquire along with the assets legal liabilities of unknown, sometimes unknowable, dimensions,” E.E.O.C. v. Vucitech, 842 F.2d 936, 944 (7th Cir.1988). But this economic policy concern has less force where, as here, the predecessor — fully aware of all liability issues— created the successor. See id. at 946 (“[T]he proper approach to the issue of successor liability is not to erect a set of hoops to force plaintiffs to jump through but to ask whether such liability would strike a reasonable balance between the interest in fully sanctioning unlawful conduct and the interest in facilitating the market in corporate and other productive assets.”). The danger of a successor corporation getting sandbagged with unknown liabilities is just not present in this *624 type of case. The danger of failing to impose the proper sanction on unlawful conduct, however, remains high.
To conclude, I would hold that the claims of the Dickson County land owners, parents and children for harms suffered as a result of environmental pollution may proceed against SBI under the express-assumption theory of successor liability. There is no basis in Tennessee law for applying the vicarious-liability extinguishment rule in the context of an express assumption; nor is there a rational policy-based reason to import such a rule. Policy points the other way. Extinguishment should not apply where a corporation intentionally passes reasonably knowable liabilities to a new entity of its own creation. Environmental contamination cases provide a good example of why — they point to the danger that a transaction could be structured to separate assets from liabilities, leaving recognized wrongs without viable remedies. For these reasons, I respectfully dissent.

. The parties agree that the terms of the 1985 Transfer Agreement dictate that Connecticut law controls the interpretation of the agreement. See Woody v. Combustion Eng'g, Inc., 463 F.Supp. 817, 819 (E.D.Tenn.1978) (“The general rule in Tennessee is that interpretation of a contract is to be governed by the law which the parties intended.”). As the Plaintiffs acknowledge, however, it does not appear that Connecticut and Tennessee law differ on the question of express assumption of liability, and presumably Tennessee law — not Connecticut law — would govern the application of the extinguishment doctrine to any assumed tort liability. See Hataway v. McKinley, 830 S.W.2d 53, 59-60 (Tenn.1992).

. In Haywin Textile, the defendants argued that Bangledeshi law (which was being applied in the case) did not allow for third-party-beneficiary contract actions. Haywin Textile Prods., Inc. v. Int'l Fin. Inv. & Commerce Bank Ltd., No. 00 Civ. 8633 RLC, 2001 WL 984721, at *4 (S.D.N.Y. Aug. 24, 2001), aff'd 38 Fed.Appx. 96 (2d Cir.2002). The district court held that, nonetheless, the plaintiff's action could still be brought under the express-assumption successor-liability doctrine, distinguishing the two doctrines by stating that the successor-liability argument "is not premised upon [a plaintiff's] particular status [as a third-party beneficiary], but rather upon the defendant’s position of exposure to general liability for the debts of the predecessor.” Thus, in that case, "[t]he assumption of liabilities contained in the Agreement [was] relevant not because it suggests that [the successor corporation] agreed to pay [the predecessor corporation’s] specific debt to [the plaintiff], but rather because it illustrates the type of relationship [the successor corporation] had with [its predecessor].” Id.