[No. D015431. Fourth Dist., Div. One. Apr. 13, 1994.]

STATE FARM FIRE AND CASUALTY COMPANY, Plaintiff and Respondent, v.
ROBERT JIORAS et al., Defendants and Appellants.

## Counsel

Brown, Pearson & Judd, Floyd R. Brown and Joan L. Pearson for Defendants and Appellants.

Hill, Genson, Even, Crandall & Wade, Tod M. Castronovo, Horvitz & Levy, Mitchell C. Tilner and Douglas G. Benedon for Plaintiff and Respondent.

## Opinion

**FROEHLICH, J.**—Robert and Charlene Jioras (appellants) purchased a house built by a partnership composed of four individuals.[1] Appellants later sued the partners, claiming the house was defective. The partners sought coverage under certain policies issued by respondent State Farm Fire and Casualty Company (insurer). Insurer accepted the defense, subject to a reservation of rights, and later sued, seeking a declaration that it had no duty to defend or indemnify. Appellants, as assignees of any rights held by the partners under the policies, appeal from the judgment which declared that insurer had no duty to indemnify under the policies.

Appellants do not contest the determination that the relevant policies did not provide coverage for their claims. Instead, they claim insurer must nevertheless provide coverage under estoppel principles because it allegedly failed adequately to reserve its rights under the "umbrella" policy. We conclude there is substantial evidence to support the trial court's determination that insurer's reservation of rights was timely, adequate and effective as to all of the partners, and hence we affirm.

I

### Factual Background

A. *Genesis of the Lawsuit*

We review the facts in the light most favorable to the judgment. (*Dwyer* v. *Crocker National Bank* (1987) 194 Cal.App.3d 1418, 1426 [240 Cal.Rptr.

---

[1]The four partners were Bahman Khosrovani, Frank Lindquist, Esmail Rakshani and Mahmoud Mamaghani.

297].) The four aforementioned partners formed a partnership which built a certain home, later rented, and then sold, to appellants. Khosrovani and Lindquist obtained (and were the named insureds) under a "rental dwelling policy" issued by insurer. They canceled this policy when the home was sold to appellants. Additionally, Khosrovani personally held two other policies: a standard homeowners policy, and a personal liability umbrella policy providing excess liability coverage. Lindquist was not a named insured under either the homeowners or the umbrella policy. Mamaghani and Rakshani were not named insureds under any of the three policies.

The court concluded these policies did not afford coverage for appellants' claim.[2] The court's conclusions as to noncoverage are not challenged on appeal.

## B. *The Conduct Alleged as Grounds for Estoppel*

Because this appeal argues solely that insurer's conduct created coverage by estoppel, we must focus particular attention on how insurer conducted itself after receiving the tender of the defense.

In April 1987 appellants sued the partners for negligent construction. Khosrovani reported the claim in early May, and on May 27 Mr. Galey, a claims representative for insurer, received the file.

Both before receiving the file and thereafter on May 28, Mr. Galey spoke with Mark Bordi, who was "looking after [the] situation" for Khosrovani. Bordi was the son-in-law of Khosrovani, as well as an experienced attorney whose firm had done work for insurer in the past. Galey told Bordi there were coverage questions under all of the policies. On May 29 Galey spoke to Khosrovani and reiterated that there were coverage questions under *all three* of the policies. During subsequent conversations with Khosrovani and Bordi, Galey consistently reiterated that the same coverage problems existed as were raised in their early conversations.

Galey also sent a series of letters to Khosrovani and Lindquist regarding coverage for the claim. On June 10 Galey sent a letter stating the insurer was

[2]The rental policy covered losses manifested during the policy period, and was inapplicable because the damage (a defective slab in the home) became manifest only after the rental policy had been canceled. Both personal policies held by Khosrovani were inapplicable because they excluded coverage for injuries arising from "business pursuits," and the sale of the home was such a pursuit. Additionally, the homeowners policy excluded coverage for claims arising from any premises other than the insured premises, here defined as Khosrovani's personal residence. Also, the umbrella policy did not extend to real property damage, but was limited to personal injury and tangible property injury.

reserving its right to contest coverage under the rental policy, and that insurer's investigation of the claim was not a waiver of any available policy defenses. A similar letter was sent to Khosrovani and Lindquist on October 27.

On October 27 Galey sent a letter to Khosrovani specifically referencing the homeowners policy. That letter stated that the claim appeared to fall under the "business pursuits" exclusion; that insurer was not accepting or rejecting the defense at that time; and that insurer was not waiving the right to rely on any other policy exclusions.

In November insurer accepted the defense of Khosrovani and Lindquist. However, insurer informed Khosrovani and Lindquist, both orally and in writing, that it was accepting the defense subject to a reservation of rights, and that the same coverage questions remained outstanding. The attorney assigned to represent the partners, Greg Konoske, met with Khosrovani, Bordi and Lindquist on December 3 and told them the umbrella policy contained a "business pursuits" exclusion on which insurer might rely.

Neither Mamaghani nor Rakshani was a named insured under any of the policies. However, a few months after accepting the defense of Khosrovani and Lindquist, insurer also accepted their defense under the rental dwelling policy. The personal lawyers for Mamaghani and Rakshani requested insurer defend these two partners in the partnership since insurer had already undertaken the defense of the two other partners. Insurer agreed but informed them it would defend Mamaghani and Rakshani subject to the same reservation of rights and coverage questions to which the defense of their partners was subject. Mamaghani and Rakshani understood the terms of their defense. The same lawyer, Mr. Konoske, was assigned to handle the defense of Mamaghani and Rakshani.

## C. *The Lawsuit*

Shortly before filing its declaratory relief action, insurer sent an additional "reservation of rights letter" stating there was a question of whether there was any duty to defend or indemnify under the umbrella policy. The letter mentioned the exclusions for "business pursuits" as well as the question of whether the loss was either property damage or personal injury as required by the policy.

Thereafter, in September 1989 insurer filed its declaratory relief action, alleging it had no duty to defend or indemnify against the claims. In April 1990, the partners and appellants settled the underlying lawsuit.[3]

The trial court ruled the policies did not provide coverage for appellants' claims, a conclusion not challenged on appeal. The court also found (1) insurer did not by its conduct waive, either expressly or impliedly, any policy defenses; (2) insurer adequately reserved its rights by the combined oral and written communications with the partners and their attorneys; and (3) appellants had failed to show insurer's conduct created a reasonable expectation of coverage or induced any detrimental reliance by the partners.

## D. Contentions on Appeal

On appeal, appellants claim there is no substantial evidence to support the finding that insurer provided a defense subject to a timely reservation of rights as to the umbrella policy, or that there was any reservation of rights as to Mamaghani or Rakshani, and hence appellants claim insurer waived the right to contest, or is estopped from denying, coverage.

## II

### ANALYSIS

## A. Standard of Review

Because most of appellants' contentions challenge the sufficiency of the evidence, we are constrained to reiterate the appropriate standard of review.[4] When a factual conclusion is attacked as lacking evidentiary support, our power is limited to determining whether the record contains substantial evidence, contradicted or uncontradicted, to support the decision. (*Bowers* v. *Bernards* (1984) 150 Cal.App.3d 870, 873-874 [197 Cal.Rptr.

---

[3]The partners paid $10,000 and stipulated to a judgment for $500,000. Appellants covenanted not to execute against the partners, and received an assignment of all of the partners' rights as against insurer. Importantly, there is no evidence appellants made any better settlement offer to the partners prior to that time.

[4]We remind appellants of the standard because their brief violates two of the most basic precepts of appellate law. First, it purports to review the facts but is almost entirely unsupported by citation to the record, in violation of California Rules of Court, rule 15(a). Second, and more importantly, appellants fail to state the facts and inferences in the light most favorable to respondent, instead stating the facts in the light most favorable to appellants. This alone would entitle us to treat appellants' claim of lack of substantial evidence as waived. (*Oliver* v. *Board of Trustees* (1986) 181 Cal.App.3d 824, 832 [227 Cal.Rptr. 1].) In the interests of justice, we will reach the issue.

925].) The testimony of a single witness is sufficient.[5] (In re *Marriage of Mix* (1975) 14 Cal.3d 604, 614 [122 Cal.Rptr. 79, 536 P.2d 479].) All conflicts, in either the evidence or the inferences to be drawn therefrom, are to be resolved in favor of the prevailing party. (*Hasson* v. *Ford Motor Co.*(1977) 19 Cal.3d 530, 544 [138 Cal.Rptr. 705, 564 P.2d 857, 99 A.L.R.3d 158].)

B. *The Evidence Supports the Conclusion That Insurer Adequately Reserved Its Rights as to All Policies*

 Appellants' principal challenge is that because the reservation of rights letters sent to Khosrovani and Lindquist did not specifically mention the umbrella policy, insurer provided them a defense under the umbrella policy without informing them it was reserving its right to contest coverage under that policy, and hence is estopped under *Miller* v. *Elite Ins. Co.* (1980) 100 Cal.App.3d 739 [161 Cal.Rptr. 322] from contesting coverage under the umbrella policy. This argument is without merit.

First, as a factual matter, there is no evidence that insurer provided a defense to any partner under the umbrella policy. To the contrary, the evidence showed that insurer provided a defense to the four partners under the rental dwelling policy and to Khosrovani under the homeowners policy. An insurer can be estopped from raising coverage defenses if, knowing of the grounds of noncoverage, it provides a defense under the policy without a reservation of rights, and the insured reasonably relies on this apparently unconditional defense to his detriment. (*Miller* v. *Elite Ins. Co.*, *supra*, 100 Cal.App.3d 739 at pp. 754-755.) Here, because insurer informed the partners it was providing a defense under the primary (*not* the umbrella) policy, the predicate for estoppel is absent.

Moreover, as a legal matter, there was neither a duty to provide any defense under the umbrella policy nor any obligation to respond to an alleged tender of the defense even had one been made, because an umbrella policy has no duty of defense until the primary policy is exhausted. (*Signal Companies, Inc.* v. *Harbor Ins. Co.* (1980) 27 Cal.3d 359, 367 [165 Cal.Rptr.

---

[5]This rule dooms a major element of appellants' claims. Appellants argue there is no evidence Galey ever reserved any rights under the umbrella policy. However, Galey testified he orally informed one or more of the partners, on numerous occasions, that coverage questions existed for *all* of the policies *including* the umbrella policy. Appellants claim this is not substantial evidence because it is not credible. However, an appellate court may not reweigh the evidence and may not reject evidence as lacking credibility unless it is physically impossible (*People* v. *Huston* (1943) 21 Cal.2d 690, 693 [134 P.2d 758], overruled on other grounds in *People* v. *Burton* (1961) 55 Cal.2d 328, 352 [11 Cal.Rptr. 65, 359 P.2d 433]) or inherently implausible (*Fortman* v. *Hemco, Inc.* (1989) 211 Cal.App.3d 241, 254 [259 Cal.Rptr. 311]). No discussion is necessary to explain that Galey's testimony as to his oral statements is neither physically impossible nor inherently implausible.

799, 612 P.2d 889, 19 A.L.R.4th 75].) Since no duty to defend arose under the excess policy, no obligation to reserve rights arose. (*Phoenix Ins. Co.* v. *United States Fire Ins. Co.* (1987) 189 Cal.App.3d 1511, 1527-1528 [235 Cal.Rptr. 185] [insurer's coverage was primary as to some periods and excess as to earlier periods; providing a defense for claims spanning both periods, without reservation of rights under excess policy, did not estop insurer from contesting excess coverage because defense was provided under primary policy and no duty to defend under excess had arisen at time defense was provided].) Since insurer had no obligation to reserve its rights under the umbrella policy, its failure to do so in writing cannot operate to its detriment. (Accord, *St. Paul Fire and Marine Ins.* v. *Childrens Hosp.* (D.D.C. 1987) 670 F.Supp. 393, 402 [insurer under both primary and excess policies provided unconditional defense under primary policy without mentioning excess; held: insurer not estopped from contesting excess coverage because defense was provided under primary, and until duty to defend under excess had arisen there was no obligation to reserve rights under excess].)

Finally, even assuming this defense—conducted under the primary policy—must as a matter of law be deemed a defense under the excess policy, the evidence supports the conclusion that insurer nevertheless adequately reserved its rights under all policies. Galey orally informed Khosrovani on several occasions, including those when discussions were held in the presence of Khosrovani's son-in-law lawyer who was sophisticated in such matters, that insurer questioned coverage under the umbrella policy and was reserving all of its rights. Moreover, Galey's letters accepted the defense subject to a "global" reservation of rights. A generalized reservation of rights has been deemed adequate by the courts. (See generally, *California Union Ins. Co.* v. *Poppy Ridge Partners* (1990) 224 Cal.App.3d 897, 901-902 [274 Cal.Rptr. 191].) There is substantial evidence to support the conclusion the reservation of rights under the umbrella policy was adequately conveyed to the partners.[6]

C. *There Is Substantial Evidence to Support the Trial Court's Conclusion That Estoppel Was Unavailable to Appellants*

■ Estoppel was the only theory on which to base coverage.[7] The trial court concluded appellants had failed to show that insurer's conduct caused

---

[6]We cannot overlook that appellants effectively argue for application of a double standard. They urge that the written acceptance of the defense must be deemed to *include* a defense under the umbrella policy, but that the writings communicating the limitations on the defense so provided must be deemed to *exclude* the defense provided under such umbrella policy.

[7]Although appellants framed the issues as waiver and estoppel, the doctrine of waiver simply has no evidentiary support. Waiver exists when the insurer intentionally relinquishes its right to rely on an exclusion. (*Prudential-LMI Com. Insurance* v. *Superior Court* (1990) 51

either (1) a "reasonable" belief that insurer was providing coverage or (2) any detrimental reliance on such conduct, both of which are essential to an estoppel claim.[8]

The record supports the inapplicability of estoppel because nothing in it suggests how the partners detrimentally relied on insurer's failure to mention the umbrella policy in the letters to the partners. Appellants claim "detrimental reliance" is shown merely by their failure to hire separate counsel to represent their interests. The record does not support this assertion from a factual standpoint.[9] An equally plausible inference is that appellants did not hire counsel simply because of the cost of litigation.[10]

---

Cal.3d 674, 689 [274 Cal.Rptr. 387, 798 P.2d 1230].) Waiver depends solely on the intent of the waiving party, and is not established merely by evidence the insurer failed to specify the exclusion in a letter reserving rights. (*Velasquez* v. *Truck Ins. Exchange* (1991) 1 Cal.App.4th 712, 722 [5 Cal.Rptr.2d 1].) There is no evidence insurer intended to sacrifice its rights under the umbrella policy, and hence any claim must be evaluated under estoppel principles. (Accord, *Insurance Co. of the West* v. *Haralambos Beverage Co.* (1987) 195 Cal.App.3d 1308, 1318-1322 [241 Cal.Rptr. 427]; *Intel Corp.* v. *Hartford Acc. & Indem. Co.* (9th Cir. 1991) 952 F.2d 1551, 1559-1560.)

[8]Despite the well-established law that the insured has the burden of pleading and proving that the insurer's assumption of the defense gives rise to waiver or estoppel (see *Insurance Co. of the West* v. *Haralambos Beverage Co., supra,* 195 Cal.App.3d at p. 1320), appellants complain they did not have such burden of proof. Appellants base their contention on a misreading of *J. C. Penney Casualty Ins. Co.* v. *M. K.* (1991) 52 Cal.3d 1009 [278 Cal.Rptr. 64, 804 P.2d 689]. They claim *J. C. Penney* holds an insured has no obligation to prove estoppel until the insurer first proves an adequate and timely reservation of rights. The court in *J. C. Penney,* however, addressed a quite different issue: whether an express reservation of rights could be forfeited by subsequent conduct creating waiver or estoppel. (*Id.* at pp. 1017-1018.) We do not read *J. C. Penney* as changing the general rule. To the contrary, it cited with approval *Insurance Co. of the West, supra,* a central holding of which was to allocate to the insured the burden of proof on these issues. (*J. C. Penney, supra,* at p. 1017.) Further, if appellants' interpretation of *J. C. Penney* were correct, waiver and estoppel would be eliminated. Under appellants' view, if the insurer did not reserve its rights the insured would *automatically* receive coverage without showing either reliance (for estoppel) or intentional relinquishment (for waiver). That is not the law in California.

[9]In particular, appellants claim (1) Khosrovani and Lindquist, relying on the assumption they had coverage under the umbrella policy, never hired separate attorneys, and (2) Rakshani and Mamaghani, relying on the same assumption, fired their separate attorneys. The evidence, viewed in the light most favorable to the judgment, does not support this factual assertion. Lindquist did not testify at trial; hence, we have no knowledge of why he did not retain counsel. Neither Mamaghani nor Rakshani testified that he and the other fired their personal lawyers based on their belief they were covered under the umbrella policy; to the contrary, they testified they believed they were being defended by insurer under the rental dwelling policy. Khosrovani did not testify as to why he chose not to hire a personal lawyer.

[10]We must draw this inference since it supports the judgment. Moreover, this inference is reasonable in light of the fact appellants knew of an existing reservation of rights on the precise policies insurer identified as those under which a defense was being provided, and yet still chose not to hire separate counsel.

Furthermore, failure to retain separate counsel does not by itself show any detriment. (*Hartford Fire Ins. Co.* v. *Spartan Realty International, Inc.* (1987) 196 Cal.App.3d 1320, 1327 [242 Cal.Rptr. 462].) Even assuming insurer had given an earlier written reservation of rights under the umbrella policy and the partners had retained separate counsel, there is no showing this separate counsel would have generated anything for the partners other than additional attorney fees. There is no showing separate counsel might have obtained a more advantageous settlement. To the contrary, the attorney representing the partners on behalf of insurer testified he never received any settlement offer below $100,000, and hence there is no evidence the partners lost any opportunity to settle for less than the $10,000 settlement they ultimately made. No claim has been asserted that if separate counsel had known of the denial of coverage under the umbrella policy, separate counsel might have structured the defense differently from the defense actually structured.[11] In short, the evidence and inferences support the conclusion there was no detrimental reliance by the partners.

D. *There Is Substantial Evidence to Support the Conclusion That Mamaghani and Rakshani Were Notified That Insurer Was Providing a Defense Subject to a Reservation of Rights*

Mamaghani and Rakshani were never personally sent a letter specifying that the defense provided them under the rental dwelling policy was subject to a reservation of rights. However, the court concluded the reservation of rights letters sent to their partners, Khosrovani and Lindquist, were sufficient to place Mamaghani and Rakshani on notice of the limitations of the defense. Appellants claim this was error.

There is certainly substantial evidence showing that Mamaghani and Rakshani were given *actual* notice of the limits on the defense insurer was providing. Galey testified he told the personal lawyers for both Mamaghani and Rakshani that insurer was undertaking their defense subject to the same reservation of rights applicable to Khosrovani. Mamaghani testified he knew he was being defended on the same terms as was Khosrovani, and admitted he was told of the reservation of rights letter sent to Khosrovani. Rakshani admitted in his deposition testimony that at his first meeting with Mr. Konoske, the attorney assigned to represent the partners, Konoske told him

---

[11] We are convinced the partners would not have benefited from any change in tactics. Here, insurer specified the "business pursuits" exclusion in the homeowners policy was one obstacle to coverage. A substantively identical exclusion in the umbrella policy for "business operations" was held to bar coverage under that policy. Since the insured thus knew (in conducting a defense) that "business pursuits" was a major obstacle to coverage, the conduct of the defense would seem unaffected by whether or not the insured was informed that the same exclusion existed under two policies.

the insurer was contesting coverage under the policies covering the house. Konoske confirmed he likewise informed both Rakshani and Rakshani's personal lawyer that the insurer's defense was subject to the reservation of rights.[12]

Although the actual notice given to Mamaghani and Rakshani suffices, we note the trial court also concluded the letters given to Khosrovani and Lindquist placed Mamaghani and Rakshani, the other two members of the partnership, on notice of the reservation of rights, apparently adopting insurer's argument that notice to one partner as to partnership business is constructive notice to all partners. On appeal, appellants do not dispute the validity of this general proposition. Instead, they argue constructive notice is inapplicable, claiming there was no evidence the partnership existed at the time the letters were sent.[13] We would be entitled to dismiss this contention peremptorily because it was not raised below. Appellants' closing argument at trial implicitly conceded a partnership existed, and asserted that Mamaghani and Rakshani qualified as additional insureds *as partners* and thus were entitled to separate notice in their individual capacities. Because of the position appellants took at trial, principles of either waiver or invited error cause appellants' contention to fail.

However, reaching the substantive claim would yield no different result, because there was evidence to permit a trier of fact to infer the partnership had *not* dissolved. First, Mamaghani testified he sought and obtained coverage under the rental dwelling policy because he was a partner in the partnership; neither Mamaghani nor any of the other partners ever referred to themselves as "former partners." Second, the dissolution was to occur only after the proceeds were divided and distributed; there was no evidence this occurred before the reservation of rights was sent.[14] (See *Credit Bureaus of Merced County* v. *Fuller* (1962) 199 Cal.App.2d 495, 496-498 [18 Cal.Rptr.

[12]Appellants complain the oral notice on which the trial court relied was inadequate because it was neither in writing nor sufficiently specific. The former complaint is without legal authority, and we are unpersuaded that *actual* notice of a reservation of rights is ineffective without a confirming letter. As to the alleged lack of specificity, appellants' argument is premised on the inference that the information conveyed to Mamaghani, Rakshani and their lawyers concerning the reservation of rights was vague. However, contrary to appellants' approach, we draw inferences *in favor of the judgment*; hence, we must infer that some or all of the communications specified the scope of that reservation of rights.

[13]Appellants claim the partnership was dissolved on the basis that the partnership agreement (exhibit 7) specified the partnership would continue until the property was developed, sold and the proceeds divided. Appellants argue that since the property was sold in early 1985, the partnership had been terminated for over two years prior to the time letters reserving insurer's rights were sent to Khosrovani.

[14]There was evidence the money from the sale was "divided," but no evidence of when this occurred.

668] [when former partner claims no liability for partnership debt based on dissolution of partnership prior to the debt, burden of proof is on former partner to prove dissolution].) Finally, the evidence showed insurer provided a defense to the individuals as partners. A partner can bind his former partners, even after dissolution, if the partnership fails to publish notice of dissolution and a person extends credit knowing a partnership had existed and not knowing of its dissolution. (Corp. Code, § 15035, subd. (1)(b)II.) It was the former partners' burden to prove the notice was published (*Epley* v. *Hiller* (1954) 128 Cal.App.2d 100, 104 [274 P.2d 696]), and no such evidence was produced below.

In brief, there are several bases for upholding the trial court's conclusion that Mamaghani and Rakshani were actually and constructively notified of the reservation of rights.

## DISPOSITION

The judgment is affirmed.

Benke, Acting P. J., and Huffman, J., concurred.