Filed 11/14/23  Safarian v. Fire Insurance Exchange CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| VAHAGUN SAFARIAN, | B323862 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 20STCV34672) |
| v. | |
| FIRE INSURANCE EXCHANGE, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Theresa M. Traber, Judge.  Affirmed.

Furtado Law and David J. Furtado for Plaintiff and Appellant.

Woolls Peer Dollinger & Scher, Gregory B. Scher, H. Douglas Galt and Sean B. Dean for Defendant and Respondent.

_____

Vahagun Safarian appeals from the judgment entered after the trial court granted the summary judgment motion filed by Fire Insurance Exchange (Fire). Safarian sued Fire for breach of contract and related claims after Fire denied in part Safarian's claim for coverage under his homeowner's insurance policy for damage to the foundation of his home resulting from a burst pipe that flooded the soil around the home.

Safarian contends the policy exclusions relied upon by Fire to deny coverage, including exclusions for foundation damage, water damage, and damage caused by earth movement, water, or settling, do not apply because a policy extension provided coverage for losses caused by accidental plumbing discharges, which was the efficient proximate cause of the foundation damage. Safarian also contends Fire waived its right to assert the foundation damage exclusion by failing to raise it during the adjustment process.

The trial court correctly granted the summary judgment motion because the coverage extension for accidental plumbing discharges also excludes foundation damage. Therefore, the efficient proximate cause doctrine does not apply. Further, there was no waiver. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Policy*

Fire issued Safarian homeowner's insurance policy number 97581-39-50, effective from June 13, 2017 through June 13, 2018 (Policy). The insured property was Safarian's three-level hillside home on Sunset Drive in Los Angeles (Property).

2

The Policy introduction states with respect to property coverage,[1] "This policy will not pay for all types of loss or damage or for all causes of loss or damage to covered property. Coverage is dependent upon both the (1) cause of the loss or damage and (2) type of loss or damage." The principal property coverage provision titled "Section I–Property Coverage . . . Loss or Damage Insured" similarly provides that the policy does not insure covered property for uninsured loss or damage and excluded causes of loss or damage listed in "Section I—Uninsured Loss or Damage and Excluded Causes of Loss or Damage."

"Section I—Uninsured Loss or Damage and Excluded Causes of Loss or Damage" comprises two parts: Part A addresses uninsured types of loss or damage, and part B addresses excluded causes of loss or damage. Part A states in relevant part, "Uninsured types of loss or damage are never covered regardless of whether any acts, omissions . . . or any other cause of loss or event contributes concurrently or in any combination or sequence to cause the uninsured type of loss or damage, except as may be stated otherwise."

Part A enumerates 13 types of uninsured loss or damage. Paragraph 1, "Water Damage" (water damage exclusion), states, "We do not insure loss or damage consisting of, composed of or which is water damage, except as covered under Section I—Extensions of Coverage, Limited Water Coverage."

Paragraph 12, "Movement, Settling, Cracking, Bulging, Shrinking, Heaving or Expanding" (foundation damage

---

[1] The Policy includes both property and liability insurance. This case involve only the property coverage provisions found in Section I of the Policy. We have omitted boldface when quoting from the Policy.

3

exclusion), states, "We do not insure loss or damage consisting of, composed of or which is the movement, settling, cracking, bulging, shrinking, heaving, or expanding of any part of covered property, whether natural or otherwise . . . . [¶] [This] includes by way of example but not limited to foundations, foundation fill material, foundation piers, foundation beams, slabs, pads, patios, walls, floors."

Part B, setting forth excluded causes of loss or damage (also referred to as "perils"), provides, "Except as expressly provided elsewhere in this policy, we do not insure property covered under this policy, . . . or extend coverage under any Extensions of Coverage for loss or damage directly or indirectly caused by, arising out of, or resulting from any of the Excluded Causes of Loss or Damage listed below . . . ." Part B enumerates 36 excluded perils, including "1. Earth Movement";[2] "25. Soil Conditions," including "saturation of the soil"; and "34. Movement, Settling, Cracking, Bulging, Shrinking, Heaving or Expanding of any Structure" (collectively, settling). Paragraph 2 excludes water as a cause of loss or damage, specifying, "This water exclusion applies even if water combines or contributes in any way with any other excluded cause of loss or damage hereunder to cause loss or damage . . . . However, see Section I— Extensions of Coverage, . . . limited coverage for water damage."

---

[2] "Earth movement" is defined as "any movement of earth," including without limitation, "subsiding," "shifting," "expanding," and "compacting," "pressure by surface earth or fill," all of which "whether combined with, caused by, or resulting from water and all whether the water event is . . . sudden and accidental or is constant . . . ."

4

Section I of the Policy also includes "Extensions of Coverage," which "are subject to all the policy terms, exclusions, . . . and conditions, including without limitation the terms and limitations of any uninsured loss or damage or excluded cause of damage set forth in Section I–Uninsured Loss or Damage and Excluded Causes of Loss or Damage . . . ." Paragraph (a) provides a limited water coverage extension, which states in relevant part, "We provide limited coverage for accidental direct, distinct and demonstrable physical water damage of covered property from direct contact with water, but only if the water results from:  [¶]  . . . [¶]  (4) a sudden and accidental discharge, eruption, overflow, or release of water . . . from within any portion of:  [¶]  (i) a plumbing system." Paragraph (b) provides that "[t]he limited coverage for water damage described at subsection a.(4) above applies even if the sudden and accidental discharge . . . is caused by" eight listed categories of otherwise excluded perils under Part B.  However, paragraph (b) does *not* list earth movement, water damage, soil conditions, and settling.  And paragraph (f) specifically excludes foundation damage:  "We do not cover any loss or damage which consists or is composed of or which is the movement, settling, cracking, bulging, shrinking, heaving, erosion, washing out or expanding of a foundation, slab, concrete floor, concrete pad or sidewalk or patio, or a foundation wall, foundation fill, or pavement."

B.    *Property Damage, Claim, and Lawsuit[3]*

On December 6, 2017 Safarian discovered that a bidet plumbing line on the top floor of the Property burst, flooding all of the floors below with a large amount of water. Water flooded the exterior of the Property as well. Safarian submitted a claim to Fire for water damage to the Property. Andrew Hodson, a senior general claims adjuster for the Farmer's Group of Insurance Companies, which includes Fire among its affiliated underwriters,[4] investigated and adjusted Safarian's claim, and Fire ultimately paid Safarian $637,999 in policy benefits, including $313,371 for damage to the Property, with the remainder for damage to personal property and loss of use.

On December 27 Safarian hired William Musakhanyan, a licensed public adjuster,[5] to handle his claim. Musakhanyan notified Hodson that the Property may have sustained foundation damage as a result of the plumbing breach. On March 12, 2018 a structural engineer retained by Safarian reported, "The water

---

[3]    Our summary of the damage to the Property and the adjustment of Safarian's insurance claim is based on undisputed facts taken from the evidence submitted by the parties in connection with Fire's summary judgment motion.

[4]    In the trial court, Safarian at times referred to Farmers when describing his claim and the adjustment process. Because Fire underwrote the Policy and only Fire was named in the lawsuit, we discuss only Fire.

[5]    A public adjuster is "a person who, for compensation, acts on behalf of or aids in any manner, an insured in negotiating for or effecting the settlement of a claim or claims for loss or damage under any policy of insurance covering real or personal property . . . ." (Ins. Code, § 15007.) Further undesignated statutory references are to the Insurance Code.

6

leak also appears to have caused fill soils in the crawl [space] . . . to settle," which in turn caused interior floor tiles to separate and an exterior foundation wall to develop cracks.  Musakhanyan transmitted the engineer's report to Hodson, who on April 10 responded by email, "Per our conversation—as you know, Earth movement is not covered."  Hodson added, "the policy does not cover water damage, but there are limited circumstances where water damage is covered . . . ."  Citing the water coverage extension policy language, which was pasted into the email, Hodson wrote, "You will see . . . under 'f' how this damage is not covered."

Fire denied Safarian's claim for foundation damage.  Fire's April 10, 2018 claim outcome letter (the claims denial) was signed by Hodson and addressed to Musakhanyan. The letter stated, "As we discussed on April 10, 2018, you reported additional damage due to expansive soils and movement. Unfortunately, there is no coverage for this portion of your claim based on the facts known to us at the present time."  The letter referenced the foundation damage exclusion in paragraph 12 of Section I – Part A ("Uninsured Types of Loss or Damage") and the earth movement and settling cause of loss exclusions in paragraphs 1 and 34 of Section I – Part B ("Excluded Causes of Loss or Damage").  The letter did not reference the water damage exclusion, the water peril exclusion, or the paragraph (f) foundation damage exclusion in the water coverage extension. However, the letter stated, "We reserve all rights and defenses under the policy and law and no activity on our part should be construed as a waiver.  Even though only parts of the policy may be mentioned or quoted in this letter, additional portions if found to be relevant will be applied."

Safarian filed this action on September 10, 2020, asserting causes of action for breach of contract, breach of the duty of good faith and fair dealing, and unfair business practices. Safarian alleged that on March 25, 2020 Fire closed his claim without paying any damages for structural issues affecting the Property, despite Safarian's reports showing the damage to the Property resulted from a "covered water loss." Fire breached the Policy by failing to pay Safarian benefits he was entitled to under the Policy. Fire also breached the duty of good faith and fair dealing by, among other things, delaying and withholding payment for claims Fire knew were valid under the Policy, misrepresenting Policy benefits, failing to engage in a good faith settlement of Safarian's claim, and failing to provide a reasonable basis for delaying or denying payment. Safarian's unfair business practices claim incorporated the allegations supporting his other causes of action and alleged Fire's conduct constituted "unlawful, unfair, fraudulent, deceptive, untrue or misleading statements and certifications, and other acts prohibited by law" in violation of the Unfair Competition Law (UCL; Bus. & Prof. Code, § 17200 et seq.).

## C.    *Fire's Motion for Summary Judgment*

On April 28, 2022 Fire filed its motion for summary judgment or in the alternative summary adjudication. Fire argued it paid all covered damages and therefore did not breach the Policy. The damage to the Property's foundation—caused, according to Safarian, when water flooded the soils at the base of the structure, causing settlement and cracking in the tiles and walls—was not covered under the Policy. First, foundation damage was an uninsured type of loss under the general

8

foundation damage exclusion and the water damage exclusion. Second, earth movement, water damage, and settling were excluded perils. Further, the paragraph (f) foundation damage exclusion within the water coverage extension excluded "any loss or damage which consists or is composed of or which is the movement, settling, cracking, bulging, shrinking, heaving, erosion, washing out or expanding of a foundation, slab, concrete floor, concrete pad or sidewalk or patio, or a foundation wall, foundation fill, or pavement." Accordingly, even if the foundation damage to the Property had been caused by a covered peril under the water coverage extension, the damage was uninsured. Because there was no breach of the Policy, there was no bad faith in administering the policy and no unfair business practices based on the same conduct.

In his opposition, Safarian argued the existence and cause of the foundation damage to the Property were disputed issues of material fact, and the exclusions relied on by Fire to deny coverage were unenforceable under section 530[6] and the efficient proximate cause doctrine. According to Safarian, the sudden plumbing failure was a covered cause of loss under the Policy's water coverage extension, and "because the water loss was the efficient proximate cause of the loss, and because the resultant earth movement and foundation damage were set in motion by the failure of the plumbing line and contributed to the loss, the exclusions for earth movement and foundation damage are

---

[6] Section 530 states, "An insurer is liable for a loss of which a peril insured against was the proximate cause, although a peril not contemplated by the contract may have been a remote cause of the loss; but he is not liable for a loss of which the peril insured against was only a remote cause."

9

inconsistent with the [efficient proximate cause] [d]octrine and unenforceable as a matter of law." Safarian also argued that Fire waived its right to assert the paragraph (f) foundation damage exclusion by failing to assert it during the two-year adjustment process.

In its reply, Fire argued there were no triable issues of fact because even assuming the foundation damage was caused by the plumbing discharge inundating the soils underneath and around the Property, the foundation damage was expressly excluded from coverage under the paragraph (f) foundation damage exclusion. Therefore, the efficient proximate cause doctrine did not apply. Fire also argued it did not waive the applicable exclusions because its denial letter quoted the earth movement and settlement exclusions and included a reservation of rights.

After a hearing, on August 10, 2022 the trial court granted Fire's summary judgment motion.[7] In its nine-page ruling, the court found the language of the Policy was undisputed and neither party offered extrinsic evidence in support of its interpretation of the coverage provisions and exclusions. Further, "the efficient proximate cause doctrine does not apply when all relevant perils are excluded from coverage." In addition, paragraph (f) of the water coverage extension "expressly excludes any loss or damage to a foundation," and "[t]he only reasonable explanation for its presence within the [water coverage extension] was that this exclusion was intended to

---

[7] The trial court declined to rule on Safarian's evidentiary objections because the court did not rely on any evidence to which Safarian objected. Safarian does not renew his objections on appeal.

10

modify the extension to expressly exclude damage to foundations caused by one of the covered sources of water damage."

With respect to Safarian's claim of waiver, the trial court found under *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1 (*Waller*) that Safarian failed to meet his burden to prove Fire intentionally relinquished its right to invoke the paragraph (f) foundation damage exclusion, and he could not meet this burden based only on Fire's denial of coverage in light of Fire's reservation of rights in the denial letter. Finally, the court found that because there was no breach of contract, Fire was entitled to summary adjudication of Safarian's derivative claims for bad faith and unfair competition and summary judgment as to the entire action.

On September 1, 2022 the trial court entered judgment against Safarian. Safarian timely appealed.

## DISCUSSION

### A. *Standard of Review*

Summary judgment is appropriate only if there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618; *Doe v. Roman Catholic Archbishop of Los Angeles* (2021) 70 Cal.App.5th 657, 668.) "'""We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained."'" [Citation.] We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that

11

party."'"" (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347; accord, *Doe*, at p. 669; *Sabetian v. Exxon Mobil Corporation* (2020) 57 Cal.App.5th 1054, 1068.)

A defendant moving for summary judgment has the initial burden of presenting evidence that a cause of action lacks merit because the plaintiff cannot establish an element of the cause of action or there is a complete defense. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853; *Sabetian v. Exxon Mobil Corporation, supra*, 57 Cal.App.5th at p. 1068.) If the defendant satisfies this initial burden, the burden shifts to the plaintiff to present evidence demonstrating there is a triable issue of material fact. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, at p. 850; *Sabetian*, at p. 1069.)

B.    *Interpretation of Insurance Contracts*

"In general, interpretation of an insurance policy is a question of law that is decided under settled rules of contract interpretation." (*State of California v. Continental Ins. Co.* (2012) 55 Cal.4th 186, 194; accord, *JRK Property Holdings, Inc. v. Colony Ins. Co.* (2023) 96 Cal.App.5th 1, 10.) "'Our goal in construing insurance contracts, as with contracts generally, is to give effect to the parties' mutual intentions. [Citations.] "If contractual language is clear and explicit, it governs." [Citations.] If the terms are ambiguous [i.e., susceptible of more than one reasonable interpretation], we interpret them to protect "'the objectively reasonable expectations of the insured.'" [Citations.] Only if these rules do not resolve a claimed ambiguity do we resort to the rule that ambiguities are to be resolved against the insurer.'" (*Minkler v. Safeco Ins. Co. of*

12

*America* (2010) 49 Cal.4th 315, 321 (*Minkler*); accord, *Montrose Chemical Corp. of California v. Superior Court* (2020) 9 Cal.5th 215, 230; *Marina Pacific Hotel & Suites, LLC v. Fireman's Fund Ins. Co.* (2022) 81 Cal.App.5th 96, 105 (*Marina Pacific*); see *Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1126 ["Ordinarily, the objective intent of the contracting parties is a legal question determined solely by reference to the contract's terms."].)

"The 'tie-breaker' rule of construction against the insurer stems from the recognition that the insurer generally drafted the policy and received premiums to provide the agreed protection." (*Minkler, supra*, 49 Cal.4th at p. 321; accord, *Marina Pacific, supra*, 81 Cal.App.5th at p. 106.) "[I]n cases of ambiguity, basic coverage provisions are construed broadly in favor of affording protection, but clauses setting forth specific exclusions from coverage are interpreted narrowly against the insurer. The insured has the burden of establishing that a claim, unless specifically excluded, is within basic coverage, while the insurer has the burden of establishing that a specific exclusion applies." (*Minkler*, at p. 322; accord, *Montrose Chemical Corp. of California v. Superior Court, supra*, 9 Cal.5th at p. 230.)

C.  *The Trial Court Properly Granted Summary Judgment Because the Policy Did Not Cover Foundation Damage to the Property*

"[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821; accord, *Marina Pacific,*

13

*supra*, 81 Cal.App.5th at p. 108.) Fire's summary judgment motion challenged only the third element, arguing Fire did not breach an obligation to pay for damage to the Property's foundation because the damage was not a covered loss under the Policy.[8] On appeal, Safarian contends the water coverage extension provided coverage for any damage to the Property resulting from a plumbing breach, regardless of whether the damage was an uninsured loss under the Policy's general terms. We agree with the trial court that foundation damage is not a covered loss under the Policy, regardless of the cause, and Fire was entitled to judgment as a matter of law.

Safarian does not assert that any term or provision of the Policy is ambiguous, nor does he argue there is extrinsic evidence bearing on the interpretation of the Policy. Accordingly, the plain language of the Policy governs its interpretation. (*Minkler, supra*, 49 Cal.4th at p. 321; accord, *Waller, supra*, 11 Cal.4th at p. 18; see Civ. Code, § 1638 ["The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."].) In determining whether there is coverage, we consider the policy as a whole, including "the endorsements broadening coverage, if any, included in the policy terms." (*Waller*, at p. 18.)

The Policy, in clear and unambiguous language, did not provide coverage for the claimed damage to the foundation wall and floor. The Policy introduction and the principal definition of an insured loss prominently state there is no coverage for the

---

[8] As noted, the trial court found (and Safarian does not dispute) Fire was entitled to judgment on all three causes of action of the complaint if the damage to the Property was not a covered loss.

14

types of damage enumerated in Section I, Part A. The foundation damage exclusion in paragraph 12 of Part A states there is no coverage for "loss or damage consisting of, composed of or which is the movement, settling, cracking, bulging, shrinking, heaving, or expanding of any part of covered property," including without limitation "foundations, foundation fill material, foundation piers, foundation beams, slabs, pads, patios, walls, floors." And paragraph 1 excludes water damage. Safarian does not dispute the damage to the Property falls within these categories of uninsured losses under the Policy's general provisions.

Safarian instead relies on the water coverage extension as a basis for coverage. Under this extension, Fire agreed in paragraph (a)(4)(i) to provide "limited coverage for accidental direct, distinct and demonstrable physical water damage" where the water damage is caused by a sudden plumbing discharge. Safarian argues this provision operated to extend coverage to any damage caused by a sudden plumbing discharge, and it is undisputed the burst bidet pipe was a sudden plumbing discharge. However, paragraph (f) of the extension excludes coverage for "the movement, settling, cracking, bulging, shrinking, heaving, erosion, washing out or expanding of a foundation, slab, concrete floor, concrete pad or sidewalk or patio, or a foundation wall, foundation fill, or pavement." Considering paragraphs (a) and (f) together, as we must, the water coverage extension as a whole provides "limited" coverage for *some*, but not all, types of water damage, and it unambiguously does not cover foundation damage even when caused by a sudden plumbing discharge. (See *Wind Dancer Production Group v. Walt Disney Pictures* (2017) 10 Cal.App.5th 56, 69 ["'We consider the contract as a whole and interpret its language in context so as to give

effect to each provision, rather than interpret contractual language in isolation.'"].)

Safarian's reliance on the efficient proximate cause doctrine to circumvent the plain meaning of the water coverage extension is misplaced. "The efficient proximate cause doctrine, codified at [section 530], provides that when ""a loss is caused by a combination of a covered and specifically excluded risks, the loss is covered if the covered risk was the efficient proximate cause of the loss,' but 'the loss is not covered if the covered risk was only a remote cause of the loss, or the excluded risk was the efficient proximate, or predominate cause.""" (*Brown v. Mid-Century Ins. Co.* (2013) 215 Cal.App.4th 841, 855, footnote omitted; accord, *Julian v. Hartford Underwriters Ins. Co.* (2005) 35 Cal.4th 747, 750 (*Julian*); see *Sabella v. Wisler* (1963) 59 Cal.2d 21, 31-32 ["'[i]n determining whether a loss is within an exception in a policy, where there is a concurrence of different causes, the efficient cause—the one that sets others in motion—is the cause to which the loss is to be attributed, though the other causes may follow it, and operate more immediately in producing the disaster'"].)

The dispositive issue here is not, as argued by Safarian, the convergence of a covered peril (flooding from the burst pipe) and an excluded peril (earth movement, water, soil conditions, and settling). As discussed, the purported covered peril is not covered at all because the water damage extension for a burst pipe itself has an exclusion in paragraph (f) for foundation damage. Thus, neither peril provides coverage.

The Supreme Court's analysis of excluded perils in *Julian, supra*, 35 Cal.4th 747 is directly on point. In *Julian*, the homeowners' insurance policy excluded losses caused by earth

16

movement and water damage. It also excluded losses from weather conditions that "contribute in any way with," among other things, earth movement or water damage. (*Id.* at pp. 751-752, 758.) The policy was otherwise an "open-peril" policy, covering all perils not expressly excluded. (*Id.* at p. 758.) The insurer denied the homeowners' claim for damage sustained after a landslide caused a tree to fall on their home, arguing that the weather conditions exclusion precluded coverage because heavy rains soaked the hillside soils and contributed to the landslide. (*Id.* at pp. 752-753.) Affirming summary judgment for the insurer, the Supreme Court rejected the homeowners' argument that the weather conditions exclusion was unenforceable under the efficient proximate cause doctrine by providing coverage for weather conditions under some circumstances but not others. (*Id.* at pp. 758-759.)

The Supreme Court in *Julian* explained, "'[A]n insurance company can limit the coverage of a policy issued by it as long as such limitation conforms to the law and is not contrary to public policy.' [Citation.] 'An insurance policy may exclude coverage for particular injuries or damages in certain specified circumstances while providing coverage in other circumstances.' [Citation.] It follows that an insurer is not absolutely prohibited from drafting and enforcing policy provisions that provide or leave intact coverage for some, but not all, manifestations of a particular peril. This is, in fact, an everyday practice that normally raises no questions regarding section 530 or the efficient proximate cause doctrine. For example, a policy might exclude losses caused by freezing to plumbing, but provide coverage for other types of freezing, or vice versa. The fact that the exclusion does

17

not apply to all types of freezing does not, by itself, render it invalid." (*Julian, supra*, 35 Cal.4th at p. 759.)[9]

Because under *Julian, supra*, 35 Cal.4th at page 759 an insurer may exclude "'coverage for particular injuries or damages in certain specified circumstances while providing coverage in other circumstances'" without running afoul of the efficient proximate cause doctrine, Fire was allowed to specify that the water coverage extension did not apply to foundation damage.

---

[9] The cases cited by Safarian precede *Julian* and involve application of the efficient proximate cause doctrine to the combination of covered and uncovered perils. Safarian principally relies on *Howell v. State Farm Fire & Casualty Co.* (1990) 218 Cal.App.3d 1446, disapproved on another ground in *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 528. In *Howell*, the homeowner's policy listed earth movement and water damage as excluded perils, but provided fire was a covered peril. The policy further stated losses due to these perils were "excluded regardless of any other causes or event contributing concurrently or in any sequence to the loss." (*Id.* at pp. 1450-1451, fn omitted.) The Court of Appeal reversed the trial court's grant of summary judgment in favor of the insurer, holding there was a triable issue of fact whether a fire that denuded the hillside was the efficient proximate cause of a landslide that damaged the homeowner's property. (*Id.* at pp. 1458-1459.) The Supreme Court in *Julian, supra*, 35 Cal.4th at page 756 distinguished *Howell*, explaining it brought about a "'fair result'" within the reasonable expectations of the insured and insurer by declining to give effect to an overbroad exclusion, while enforcing "the exclusions to the extent that they applied to losses *proximately* caused by the peril explicitly named therein." As discussed, here, as in *Julian*, there was no covered peril that contributed to the property damage.

18

D.    *Safarian Presented No Evidence To Show Fire Waived the*
      *Paragraph (f) Foundation Damage Exclusion*

Safarian contends Fire waived its right to enforce the paragraph (f) foundation damage exclusion by failing to assert it during the adjustment of his claim.  Safarian failed to present evidence to create a triable issue of fact as to waiver.

"'"[W]aiver is the intentional relinquishment of a known right after knowledge of the facts."  [Citations.]  The burden . . . is on the party claiming a waiver of a right to prove it by clear and convincing evidence that does not leave the matter to speculation, and "doubtful cases will be decided against a waiver" [citation].'  [Citations.]  The waiver may be either express, based on the words of the waiving party, or implied, based on conduct indicating an intent to relinquish the right."  (*Waller, supra*, 11 Cal.4th at p. 31; accord, *Santa Clara Valley Water Dist. v. Century Indemnity Company* (2023) 89 Cal.App.5th 1016, 1055 (*Santa Clara Valley*).)

In the insurance context, "California courts have applied the general rule that waiver requires the insurer to intentionally relinquish its right to deny coverage and that a denial of coverage on one ground does not, absent clear and convincing evidence to suggest otherwise, impliedly waive grounds not stated in the denial."  (*Waller, supra*, 11 Cal.4th at p. 31; see *Santa Clara Valley, supra*, 89 Cal.App.5th at p. 1055 ["'"[A] waiver exists whenever an insurer intentionally relinquishes its right to rely on the limitations provision.  [Citation.]"  [Citation.]  Whether a waiver has occurred depends solely on the intention of the waiving party."'].)  Waiver "is not established merely by evidence the insurer failed to specify the exclusion in a letter reserving rights."  (*State Farm Fire & Casualty Co. v. Jioras* (1994)

19

24 Cal.App.4th 1619, 1627-1628, fn. 7; accord, *Velasquez v. Truck Ins. Exchange* (1991) 1 Cal.App.4th 712, 722 ["An intention to waive a limitations provision is not evinced by the failure to raise that point in a letter denying a claim."]; see *Waller*, at p. 31 [general liability insurer did not impliedly waive defenses to coverage that it did not mention in a claims denial letter where the letter did not indicate an intention to relinquish additional bases for denial].)[10] "'[W]aiver is ordinarily a question of fact but becomes a question of law where the facts can support only one conclusion,'" and "the issue of waiver may be . . . properly resolved by summary judgment [where] the evidentiary record compel[s] the conclusion that there was no waiver." (*Santa Clara Valley*, at p. 1056.)

Safarian did not present evidence that Fire intentionally relinquished its right to assert the paragraph (f) foundation damage exclusion. He cited the April 10, 2018 claim denial that Hodson transmitted to Musakhanyan, which referred only to the

---

[10]    Safarian relies on two federal district court cases, *McLaughlin v. Connecticut General Life Ins. Co.* (N.D.Cal. 1983) 565 F.Supp. 434, 451 to 452 and *Zumbrun v. United Services Auto. Ass'n* (E.D.Cal. 1989) 719 F.Supp. 890, 896, to argue that an insurer waives a defense to coverage by failing to assert it in the denial letter. But the Supreme Court in *Waller* explicitly declined to follow this rule: "We . . . decline to follow the *McLaughlin* rule of automatic waiver. A holding that an insurer waives defenses not asserted in its initial denial of a duty to defend would be inconsistent with established waiver principles by erroneously implying an intent to relinquish contract rights where no such intent existed. Such a conclusion would contradict the holdings of the majority of California and sister-state cases addressing the waiver issue." (*Waller, supra*, 11 Cal.4th at p. 33.)

general foundation damage exclusion (as well as the excluded perils of earth movement and settling) and not the paragraph (f) foundation damage exclusion.  The letter further stated, "We reserve all rights and defenses under the policy and law and no activity on our part should be construed as a waiver.  Even though only parts of the policy may be mentioned or quoted in this letter, additional portions if found to be relevant will be applied."  The letter, as a matter of law, did not constitute an implied waiver of an unasserted defense to coverage.  (*Waller, supra*, 11 Cal.4th at p. 31; *State Farm Fire & Casualty Co. v. Jioras, supra*, 24 Cal.App.4th at pp. 1627-1628, fn. 7; *Velasquez v. Truck Ins. Exchange, supra*, 1 Cal.App.4th at p. 722.)

Moreover, Safarian's contention that Fire never raised the paragraph (f) foundation damage exclusion during the two-year adjustment process is false.  Hodson sent Musakhanyan an email on the same day as Fire's claims denial in response to the structural engineering report Musakhanyan sent Hodson to support additional foundation damages.  In his email, Hodson stated the language of the water coverage extension and emphasized that although "there are limited circumstances where water damage is covered," "[y]ou will see . . . under 'f' how this damage is not covered."  Both Hodson and Musakhanyan were professional adjusters engaged in an ongoing process of adjusting the claim.  Further, the fact the parties subsequently engaged in a protracted process of disputing the extent to which the plumbing discharge caused the foundation damage does not support an inference Fire relinquished its right to rely on paragraph (f) because Fire was free to develop one defense without impliedly waiving another.  (*Waller, supra*, 11 Cal.4th at p. 31.)  And Safarian failed to identify any actions by Fire that

21

were inconsistent with its enforcement of the Policy exclusions. Finally, Safarian's contention that he relied to his detriment on his belief Fire was not asserting the exclusion—by commissioning additional reports and making certain repairs—is irrelevant to the threshold question of whether there was a waiver. (*Santa Clara Valley, supra*, 89 Cal.App.5th at p. 1055 ["Whether a waiver has occurred depends solely on the intention of the waiving party."].)

## DISPOSITION

The judgment is affirmed. Fire is to recover its costs on appeal.

FEUER, J.

We concur:

PERLUSS, P. J.

EVENSON, J.*

---

* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.